**CT Corporation**

**Service of Process Transmittal**
08/04/2015
CT Log Number 527587322

TO: Gwen Bulington, Corporate Paralegal
TitleMax
15 Bull St Ste 200
Savannah, GA 31401-2686

RE: **Process Served in Missouri**

FOR: TitleMax of Missouri, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Timothy H. Jones, Pltf. vs. TitleMax of Missouri, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | 22nd Judicial Circuit Court of City of St Louis, MO<br>Case # 1522CC10212 |
| **NATURE OF ACTION:** | Plaintiff seeking damages from defendant for failed to reduce the principal of the loan by 10% upon the third and subsequent renewals |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/04/2015 at 09:00 |
| **JURISDICTION SERVED :** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after receiving the summons, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Jesse B. Rochman<br>Sandberg Phoenix & Von Gontard P.C.<br>600 Washington Avenue, 15th Floor<br>St. Louis, MO 63101<br>314-231-3332 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 781098030704 |
| | Email Notification,  Danielle Gibson  danielle.gibson@titlemax.biz |
| | Email Notification,  Gwen Bulington  Gwen.Bulington@titlemax.biz |
| | Email Notification,  Maria Danello  maria.danello@titlemax.com |
| | Email Notification,  Jennifer Harris  jennifer.harris@titlemax.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 120 South Central Avenue<br>Suite 400<br>Clayton, MO 63105 |
| **TELEPHONE:** | 314-863-5545 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.


EXHIBIT
A



# IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number:  1522-CC10212 |
|---|---|
| Plaintiff/Petitioner:<br>TIMOTHY H JONES | Plaintiff's/Petitioner's Attorney/Address<br>JESSE BARRETT ROCHMAN<br>600 WASHINGTON AVENUE<br>15TH FLOOR |
| vs. | SAINT LOUIS, MO  63101-1313 |
| Defendant/Respondent:<br>TITLEMAX OF MISSOURI, INC. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD |
| Nature of Suit:<br>CC Other Miscellaneous Actions | SAINT LOUIS, MO  63101                    (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **TITLEMAX OF MISSOURI, INC.**
                          Alias:

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

**ST LOUIS COUNTY SHERIFF**

*COURT SEAL OF*              You are summoned to appear before this court and to file your pleading to the petition, a copy of
                          which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the
                          above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to
                          file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*CITY OF ST LOUIS*

**JULY 24, 2015**                    *Thomas Kloeppinger*
        Date                         Thomas Kloeppinger
                                     Circuit Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*          Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                    Date                                Notary Public

Sheriff's Fees, if applicable

| Summons | $ |
|---|---|
| Non Est | $ |
| Mileage | $_____ ( _____ miles @ $ ._____ per mile) |
| Total | $ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of
suits, see Supreme Court Rule 54.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

**1522-CC10212**

## TWENTY-SECOND JUDICIAL CIRCUIT COURT
## ST. LOUIS CITY, MISSOURI

TIMOTHY H. JONES,

     Plaintiff,

v.                                                Case No.
                                                 Division:
TITLEMAX OF MISSOURI, INC.,
**Serve:**
**C T CORPORATION SYSTEM**                        **JURY TRIAL DEMANDED**
**120 South Central Avenue**
**Clayton, MO 6310**

     Defendant.

### Petition

    Plaintiff Timothy H. Jones ("Jones"), through his attorneys Sandberg Phoenix & von

Gontard PC, sues Defendant TitleMax of Missouri, Inc. ("TitleMax"):

### Table of Contents

Nature of Case ........................................................................................................ 2

Parties .................................................................................................................... 2

Jurisdiction and Venue .......................................................................................... 3

Organizational Structure of TitleMax ................................................................... 3

Title Loans ............................................................................................................. 4

TitleMax's Business ............................................................................................... 7

General Allegations ............................................................................................. 10

Class Allegations ................................................................................................. 15

Count I – Declaratory Judgment ......................................................................... 18

Count II – Private Right of Action under Chapter 367 ........................................ 21

Count III – Missouri Merchandising Practices Act ............................................. 22

Count IV – Chapter 408 Violations ..................................................................... 25

Count V – UCC Violations .................................................................................. 27

Count VI – MMPA ............................................................................................... 29

Prayer for Relief .................................................................................................. 31

6385767.2                                1

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## Nature of Case

1.      This is a consumer class action against TitleMax seeking relief to redress an unlawful and deceptive pattern of wrongdoing conducted by TitleMax regarding the formation, collection, and enforcement of its title loan agreements and its disposition of the consumer property secured by the title loan agreements.

2.      TitleMax violated §§ 367.500 to 367.533 regarding its title loans with Jones and many other Missouri Consumers ("Title Loan Agreements"). The Title Loan Agreement entered into between TitleMax and Jones is attached as **Exhibit A.**

3.      TitleMax wrongfully accelerated the maturity of the unpaid balance under the Title Loan Agreements and otherwise wrongfully enforced its security interest under the Title Loan Agreements because TitleMax either failed to give the right to cure notice required by § 408.554 ("Right to Cure Notices") or gave defective Right to Cure Notices.

4.      TitleMax failed to send Jones and numerous other Missouri consumers a presale notice, which complied with the Uniform Commercial Code ("UCC") adopted by Missouri.

5.      TitleMax failed to send Jones and numerous other Missouri consumers a post-sale notice, which complied with the UCC.

6.      Jones sues for himself and all other similarly situated Missouri consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

7.      Jones is a resident of Troy, Missouri.

8.      TitleMax is a Delaware corporation, headquartered at 15 Bull Street, Suite 200, Savannah, Georgia 31401, which does substantial business in Missouri. TitleMax of Missouri, Inc. does business as TitleMax and TitleBucks.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

### Jurisdiction and Venue

9.     The Circuit Court of St. Louis City, Missouri has jurisdiction over this matter under Article V, § 14 of the Missouri Constitution and § 478.070 which grant Missouri circuit courts original jurisdiction over all civil cases and matters.

10.     Venue is proper in this Court under § 508.010 because TitleMax is not a resident of Missouri and does substantial business in St. Louis City.

### Organizational Structure of TitleMax

11.     The TitleMax family of companies includes: (1) TitleMax Finance Corp., (2) TMX Finance LLC, (3) TMX Finance Holdings Inc., (4) TitleMax Holdings, LLC, (5) TMXA, LLC, (6) TMX Credit, Inc., (7) TMX Investments, LLC., (8) TitleMax Funding, Inc., (9) TitleMax Management Services, Inc., and (10) TitleMax Construction, LLC.

12.     TMX Finance LLC has multiple wholly-owned operating subsidiaries set up in various states, including TitleMax of Alabama, Inc.; TitleMax of Arizona, Inc.; TitleMax of Georgia, Inc.; TitleMax of Illinois, Inc.; TitleMax of Mississippi, Inc.; TitleMax of Missouri, Inc.; TitleMax of Nevada, Inc.; TitleMax of S. Carolina, Inc.; TitleMax of Tennessee, Inc.; TitleMax of Texas, Inc.; and TitleMax of Virginia, Inc..

13.     Although the TitleMax family of companies may be registered as separate companies, in reality they all operate together as a single entity under the joint control of Tracy Young ("Young"), with no separation.

14.     Despite these multiple subsidiaries, TitleMax operates as a single entity, under the control of Young. There is no meaningful division or separation between the entities within the TitleMax family of companies.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

15.　　All TitleMax stores, regardless of whether they may be owed by any subsidiary, are operated under a company-wide risk management system supported by district and regional managers all under the same central leadership of Mr. Young.

16.　　Young is the founder, Chairman of the Board, Chief Executive Officer, President and the sole beneficial owner of TMX Finance LLC's parent holding company, TMX Finance Holdings Inc., and all other TitleMax companies. He is also the CFO and the Secretary.

17.　　Young controls substantially all matters of significance to all TitleMax companies, including the strategic direction of their business; the election and removal of their managers; the appointment and removal of their officers; the approval or rejection of a sale, merger, consolidation or other business combination; the issuances of additional equity or debt securities; amendments of its organizational documents; and the entering into of related party transactions and the dissolution and liquidation.

18.　　TMX Finance LLC's principal corporate office is at 15 Bull Street, Suite 200, Savannah, Georgia 31401. This is the same address listed by the Missouri Secretary of State's records for TitleMax of Missouri, Inc., and on information and belief, the same address for the other TitleMax companies.

19.　　TitleMax has over 1,400 company-owned stores in 17 states (Alabama, Arizona, California, Delaware, Georgia, Illinois, Mississippi, Missouri, Nevada, New Mexico, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin).

### Title Loans

20.　　Title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-clear.

21.　　Title loans are traditionally offered as single-payment loans with one-month terms, which are often renewed multiple times.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

22.    An emerging practice is a movement toward title loans that are longer-term, high-cost installment products.

23.    Title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often higher than 200%.

24.    A typical borrower on a title loan pays twice as much in interest and fees than the borrower receives in credit extended.

25.    Nationally, car title lending drains $4.3 billion annually in excessive fees.

26.    Title lenders engage in asset-based lending (making loans without evaluating the borrower's ability to repay the loan). Instead, lenders base whether and how much to lend on the value of the collateral.

27.    Car-title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

28.    A typical car-title loan requires no credit check, and lenders rarely ask about monthly expenses or debts. Some do not ask about income or require that the borrower have a bank account.

29.    Rather than properly underwriting the loans based on a borrower's income and obligations, lenders protect themselves from loan losses by lending only a small percentage (about one-quarter) of the car's consumer resale value (commonly known as "Blue Book" value) and repossessing the vehicle if default occurs.

30.    Title lenders generally have no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments. Ability to repay is not part of the underwriting process. Because some lenders lend at a small percentage of the

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

car's value, title lenders can rely on selling the car if the borrower stops making the monthly payments.

31.     Title lenders systematically disregard a borrower's ability to repay, as demonstrated through at least three modes: lenders' advertising and marketing, industry data and statements, and negative consumer outcomes—namely, repeat loan refinancings and vehicle dispositions.

32.     An analysis of the records from 561 auto title borrowers shows the median loan size was $845, the median car value (Blue Book value) was $3,150, the median loan-to-value ratio was 26% and the median APR was 300%.[1]

33.     The Missouri Auditor's report documented that 70% of title and payday loan consumers earned less than $25,000 per year.[2]

34.     Half of all car-title borrowers are unbanked, lacking access to both mainstream and subprime credit.[3]

35.     For consumers living paycheck to paycheck, the short timeframe of these loans can make it difficult to accumulate the necessary funds to pay off the loan principal and fees before the due date.[4]

36.     Borrowers who cannot repay are often encouraged to roll over the loan -- pay more fees to delay the due date or take out a new loan to replace the old one.[5]

37.     For many borrowers, what starts out as a short-term, emergency loan turns into an unaffordable, long-term debt trap.[6]

---

[1] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 4 (Mo. 2001).
[2] http://www.responsiblelending.org/state-of-lending/reports/7-Car-Title-Loans.pdf.
[3] Id.
[4] http://www.consumerfinance.gov/newsroom/cfpb-considers-proposal-to-end-payday-debt-traps/
[5] Id.
[6] Id.

Electronically Filed - City Of St. Louis - July 24, 2015 - 12:06 PM

38.     In Missouri, "on average, title . . . lenders make 3.5 times more renewal loans than new loans each month."[7]

39.     The 2001 Missouri Auditor's Report provides a real life example:

A consumer obtained a title loan for $900 on July 7, 2000, renewed the loan 3 times paying $902 in interest and fees, but made no reductions in the principal amount. The consumer obtained this loan against her 1993 Buick Century. She was 67 years old, living on a fixed income, and as of October 2000 her loan was still open. She has already paid the equivalent of the loan value in fees, and still owes the $900. This practice will continue until the consumer starts paying on the principal. In this example, the consumer is "hanging on" by paying fees but has still not been able to satisfy the loan.

40.     Additional history on title loans and lenders is attached as **Exhibit B.**

## TitleMax's Business

41.     TitleMax acts as a title lender without a title loan license.

42.     TitleMax offers to lend money at high rates of interest, with its title loans secured by titles to consumer's motor vehicles.

43.     TitleMax is one of the nation's largest title lending companies, providing over 2,500 consumers title loans every day.[8]

44.     TitleMax specializes in motor vehicle title loans, which it advertises as "a fast and easy way to get cash using your car title instead of your credit score."[9,10]

45.     TitleMax markets its loans as "title loans." [11,12]

46.     TitleMax markets itself as a title lender that issues title loans. [13,14]

---

[7]  The 2001 Missouri Auditor's Report, at 3.
[8]  https://www.titlemax.com/about-us/
[9]  https://www.titlemax.com/about-us/
[10]  https://www.titlemax.com/title-loans/
[11]  https://www.titlemax.com/about-us/
[12]  https://www.titlemax.com/title-loans/
[13]  https://www.titlemax.com/about-us/
[14]  https://www.titlemax.com/title-loans/

Electronically Filed - City of St. Louis - July 24, 2015 - 12:08 PM

47.     TitleMax has submitted business applications in Missouri listing "Title Loans" as one of its types of business and "Title Lending" as the nature of its business.

48.     TitleMax's parent company has stated in Missouri, title loans receivable comprise 24-month title loans with payments of principal and interest due monthly.

49.     TitleMax's parent company has stated TitleMax is a wholly-owned title lending subsidiary.

50.     TitleMax's title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-clear.

51.     TitleMax title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often as high as 200%, if not more.

52.     TitleMax advertises that it makes the "title lending process simple" and it will determine a title loan amount based upon the consumer's need and the appraised value of the vehicle.[15]

53.     TitleMax advertises that consumers are eligible for title loans even if they have bad credit or no credit.[16]

54.     TitleMax has stated that "All underwriting decisions are made based on the appraised wholesale value of a customer's vehicle rather than credit score."[17]

55.     TitleMax engages in asset-based lending, basing whether and how much to lend on the value of the collateral.

56.     TitleMax's title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

---

[15] https://www.titlemax.com/faqs/
[16] https://www.titlemax.com/faqs/
[17] http://www.sec.gov/Archives/edgar/data/1511966/000119312511107453/d424b1.htm

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

57.   TitleMax requires no credit check, and rarely asks about monthly expenses or debts.

58.   TitleMax's borrowers have zero power to negotiate the Title Loan Agreements, including a reasonable interest rate or the waivers of their rights and protections, and will pay whatever amount TitleMax charges.

59.   TitleMax's Title Loan Agreements are non-negotiable and difficult for the average consumer to understand

60.   On information and belief, no consumer has ever successfully renegotiated the standard terms of TitleMax's Title Loan Agreements.

61.   Rather than properly underwriting the loans based on a borrower's income and obligations, TitleMax protects itself from loan losses by lending only a small percentage of the conservative wholesale value of the customer's automobile in the Black Book, as opposed to the higher retail value in the Black Book.

62.   TitleMax has no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments.

63.   Ability to repay is not part of the underwriting process for TitleMax.

64.   Because TitleMax lends at a small percentage of the car's value, TitleMax relies on selling the car if the borrower stops making the monthly payments.

65.   TitleMax's typical car title loan is refinanced eight times according to testimony given by a former president of TitleMax.

66.   TitleMax relies on loan renewals as underpinning its business structure.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

67.     TitleMax systematically disregards a borrower's ability to repay, as demonstrated through at least three modes: its advertising and marketing, industry data and statements, and negative consumer outcomes—namely, repeat loan refinancings and vehicle dispositions.

### General Allegations

68.     Jones obtained a title loan from TitleMax secured by his motor vehicle title.

69.     Jones' Title Loan Agreement (Exhibit A) provided a loan of $5,013.50 ("Amount Financed") with an annual percentage rate of 119.9916%. The Title Loan Agreement required 23 monthly payments of $557.97 and one final monthly payment of $558.14. If each of the payments were made as scheduled, Jones would pay over $5,377 in interest ("Finance Charge").

70.     Jones' Title Loan Agreement required him to deliver title of his motor vehicle to TitleMax and allow TitleMax to note its lien on the certificate of title.

71.     Jones' Title Loan Agreement provided that TitleMax would hold the certificate of title until Jones timely satisfied the title loan by paying the amount due under the Title Loan Agreement, at which time TitleMax would release its lien and return the certificate of title to Jones.

72.     Jones' Title Loan Agreement provided that if the consumer defaulted, upon acceleration of the principal balance plus accrued interest, interest will continue to accrue only on the principal balance owing at the contract rate until final judgment.

73.     The Title Loan Agreement entered into by Jones is a standardized form and is the same or similar to the Title Loan Agreements entered into by each member of the Class (defined below).

74.     The Title Loan Agreement was entered into for personal, family, or household purposes and the motor vehicle was used for personal, family, or household purposes.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

75.     Jones and each member of the Class who entered into a Title Loan Agreement with TitleMax were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

76.     For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

a.      As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.      As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.      As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

h.      As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

i.      As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

k.      Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

l.      Otherwise failed to provide all required notices to Jones and the Class.

m.      Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

77.      TitleMax knowingly violated §§ 357.500 to 367.533 in violation of § 367.527.

78.      TitleMax violated §§ 357.500 to 367.533 when conducting transactions with Jones' and the Class, rendering the Title Loan Agreements void under § 367.527.2.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

79.     After Jones and the Class missed a payment under the Title Loan Agreement, TitleMax either failed to give them a Right to Cure Notice or gave a defective Right to Cure Notice that included misleading or incorrect information.

80.     TitleMax accelerated the balances due on Jones' and the Class's Title Loan Agreements without giving the required Right to Cure Notices.

81.     After default, TitleMax continued to charge Jones and the Class interest at the rate in the Title Loan Agreements before obtaining a final judgment in violation of § 408.553.

82.     TitleMax or someone at TitleMax's direction sold the motor vehicles secured by the Title Loan Agreements without giving the required Right to Cure Notices.

83.     Under § 408.555, TitleMax wrongfully accelerated Jones' and the Class's Title Loan Agreements by failing to give the required Right to Cure Notices before acceleration.

84.     Under § 408.555, TitleMax wrongfully enforced its security interest under the Title Loan Agreements with Jones and the Class, by among other things, selling their motor vehicles before giving the required Right to Cure Notices.

85.     TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

86.     TitleMax or someone at TitleMax's direction either failed to send or sent defective presale notices to Jones and the Class advising them of TitleMax's intent to dispose of their motor vehicles.

87.     If presale notices were sent, they were not reasonable as required by § 400.9-611(b) because the presale notices were misleading because, among other reasons, Jones and the Class were not required to pay any amount to get their motor vehicles back.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

88.     TitleMax failed to send Jones and the Class reasonable authenticated notices of disposition as required by § 400.9-611.

89.     TitleMax or someone at TitleMax's direction disposed of Jones' and the Class's motor vehicles without sending or after sending defective Right to Cure Notices and presale notices.

90.     After disposition, TitleMax or someone at TitleMax's either failed to send or sent defective post-sale notices to Jones and the Class explaining how it calculated their deficiency balances.

91.     If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

    a.  do not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);

    b.  do not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the surplus, as required by § 400.9-616(a)(1)(C); and

    c.  misstate the aggregate obligation (as required by § 400.9-616(c)(1)) and the deficiency or surplus (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances that had not become due and interest and charges prohibited by law.

92.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for Jones and the Class.

93.     TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

6385767.2                                        14

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

94.     TitleMax's violation of Chapter 400 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

95.     TitleMax's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Jones and the Class.

### Class Allegations

96.     Jones sues for himself and a class designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

97.     The Class comprises all persons who entered into a loan agreement with TitleMax at any location in Missouri, and the loan agreement was secured by a motor vehicle title.

98.     Disposition Subclass comprises those members of the Class whose motor vehicles were sold by or at the direction of TitleMax from July 24, 2009 to the present.

99.     The classes are believed to be so numerous that joinder of all members is impractical.

100.    There are questions of law and fact common to the classes.

101.    The principal legal questions common to Jones and each Class member are:

      a.     Whether the title loans with TitleMax complied with disclosure, notice and consumer protection provisions of §§ 367.500 to 367.533.

      b.     Whether the title loans with TitleMax are void.

      c.     Whether Jones and the Class are entitled to punitive damages.

102.    The principal legal questions common to Jones and each Disposition Subclass member are:

      a.     Whether TitleMax unlawfully charged and collected interest in violation of § 408.553.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

    b.      Whether TitleMax failed to give Right to Cure Notices as required by § 408.554, and if not, whether the defective Right to Cure Notices make the presale and post-sale notices defective if they were sent.

    c.      Whether TitleMax failed to give presale notices as required by § 400.9-611.

    d.      Whether TitleMax failed to give post-sale notices as required by § 400.9-616.

    e.      Whether Jones and the Disposition Subclass are entitled to punitive damages.

103.    Jones' claims are typical of the claims of the classes.

104.    Jones' claims are based on the same factual and legal theories as the classes' claims.

105.    The violations alleged by Jones and the Class derive from written, form Title Loan Agreements that violate §§ 367.500 to 367.533 in one or more of the same ways.

106.    The violations alleged by Jones and the Class derive from standard pattern of conduct by TitleMax regarding its title loans that violates §§ 367.500 to 367.533.

107.    The violations alleged by Jones and the Disposition Subclass derive from a standard pattern of conduct by TitleMax in failing to send Right to Cure Notices or sending written, form Right To Cure Notices that fail to comply with §§ 408.554 and 408.555.

108.    The violations alleged by Jones and the Disposition Subclass derive from written, form presale notices that fail to comply with the Missouri UCC.

109.    The violations alleged by Jones and the Disposition Subclass derive from written, form post-sale notices that fail to comply with the Missouri UCC.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

110.     Jones and each member of the Class are entitled to a declaration that the Title Loan Agreements are void, actual damages equal to any amount paid to TitleMax beyond the original Amount Financed, and punitive damages.

111.     Jones and each member of the Disposition Subclass were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to TitleMax's unlawful collection of interest, and its failure to give proper Right to Cure Notices, presale notices and post-sale notices.

112.     Jones will fairly and adequately represent and protect the interests of the classes.

113.     Jones has no interests antagonistic to those of the classes.

114.     Jones' counsel is competent and experienced in consumer and class litigation.

115.     Jones and all class members have an interest in determining the adequacy of the Title Loan Agreements, Right to Cure Notices, presale notices and post-sale notices sent by TitleMax and to recover damages due to the statutorily defective Right to Cure Notices, presale notices and post-sale notices.

116.     The questions of law or fact common to the classes predominate over questions affecting only individual members.

117.     Jones and each member of the classes will rely on the same basic evidence (i.e., TitleMax's businesses model and marketing, the Title Loan Agreements, the form Right to Cure Notices, presale notices and post-sale notices).

118.     Determining the legality of the Title Loan Agreements resolves all Class members' claims because each Title Loan Agreement suffers from at least one of the same deficiencies as Jones' Title Loan Agreement.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

119.    Determining the sufficiency of the Right to Cure Notices, presale notices and post-sale notices resolves all Disposition Subclass members' claims because TitleMax either failed to send these notices entirely or each notice sent to the Disposition Subclass members would suffer from at least one of the same deficiencies as any notices allegedly sent to Jones.

120.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

121.    The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

122.    A consumer probably could not retain counsel to pursue individual claims against TitleMax.

123.    Most class members are probably unaware TitleMax violated their rights and the law.

124.    If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

125.    Concentrating the litigation of Jones' and the classes' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

126.    The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

### Count I – Declaratory Judgment
### (Class)

127.    Jones repeats the allegations set forth above as if set forth in Count I.

128.    A justiciable controversy exists between TitleMax and the Class for which the Class has no adequate remedy at law.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

129.   TitleMax acts as a title lender without a title loan license.

130.   The Title Loan Agreements for the Class were all secured by title to the Class's motor vehicles.

131.   Sections 367.500 to 367.533 were enacted to protect the consumer borrower.

132.   The Title Loan Agreements represent transactions clearly within the spirit or reason of §§ 367.500 to 367.533, or within the evil which those statutes were designed to remedy.

133.   For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

a.   As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.   As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.   As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.   As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

returning the full principal amount to the lender by the close of the lender's next full business day."

      e.     As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

      f.     As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

      g.     As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

      h.     As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

      i.     As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

      j.     As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

      k.     Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

      l.     Otherwise failed to provide all required notices to Jones and the Class.

      m.     Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

134.     TitleMax knowingly violated §§ 357.500 to 367.533 in violation of § 367.527.

135.     TitleMax violated §§ 357.500 to 367.533 when conducting transactions with Jones' and the Class, rendering the Title Loan Agreements void under § 367.527.2.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

136.    Jones and the Class are not bound by the Title Loan Agreements.

137.    Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

## Count II – Private Right of Action under Chapter 367
### (Class)

138.    Jones repeats the allegations set forth above as if set forth in Count II.

139.    Sections 367.500 to 367.533 protect consumer borrowers by requirement and proscription of certain conduct but provide no express civil remedy to persons injured by a title lenders failure to comply with sections 367.500 to 367.533.

140.    TitleMax violated §§ 367.500 to 367.533 when negotiating, offering, soliciting or entering into the Title Loan Agreements with Jones and the Class.

141.    As a direct and proximate result of TitleMax's failure to comply with the requirements of §§ 367.500 to 367.533, Jones and the Class suffered actual damages, including:

a.      Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

b.      Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

c.      Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

d.      Paid fees and incurred costs besides the principal on the loan.

e.      Other uncertain and hard-to-quantify actual damages.

142.    Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## Count III – Missouri Merchandising Practices Act
## (Class)

143.     Jones repeats the allegations set forth above as if set forth in Count III.

144.     This Count is brought under the Missouri Merchandising Practices Act ("MMPA"), §§ 407.010 *et seq.*

145.     Jones and the Class purchased services primarily for personal purposes, and suffered an ascertainable loss as the result of the use and employment by TitleMax of methods, acts and practices declared unlawful under Missouri law.

146.     Jones and the Class may bring this action under § 407.025.

147.     Jones and the Class entered into consumer transactions with TitleMax which involved the payment of interest and fees as a condition for obtaining short-term loans.

148.     Lending is included in the definition of "merchandise" under the MMPA.

149.     Jones' and the Class's loans were obtained exclusively for their personal use.

150.     During these transactions, TitleMax engaged in unfair or deceptive trade practices including the issuing of loans through unlawful trade practice, concealment, suppression, omission of, and the knowing failure to state, material facts, including:

    a.     As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

b.     As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.     As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.     As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.     As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.     As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.     As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

h.     As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

i.     As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.     As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

k.      Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

l.      Otherwise failed to provide all required notices to Jones and the Class.

m.      Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

n.      TitleMax holds itself out to be a title lender issuing title loans, but asserts it is not a title lender, does not issue title loans, and is not required to disclose matters required for title loan transactions.

151.    TitleMax willfully and intentionally violated the MMPA.

152.    As a direct and proximate result of TitleMax's failure to comply with the the MMPA, Jones and the Class are aggrieved and have suffered ascertainable losses, including:

a.      Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

b.      Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

c.      Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

d.      Paid fees and incurred costs besides the principal on the loan.

e.      Other uncertain and hard-to-quantify actual damages.

153.    TitleMax's violation of Chapters 367 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

154.    TitleMax's violation of Chapters 367 and 408 offends the laws of this state intended to protect the public and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

155.    TitleMax's violation of Chapters 367 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

156.    The MMPA provides the trial court may order an injunction or other equitable relief and reasonable attorney's fees.

157.    Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

### Count IV – Chapter 408 Violations
### (Disposition Subclass)

158.    Jones repeats the allegations set forth above as if set forth in Count IV.

159.    Section 408.553 prohibits a lender from charging or collecting interest after default until after a final judgment is obtained.

160.    Contrary to § 408.553, the Title Loan Agreements provide interest will continue to accrue on the Title Loan Agreements after default even if no final judgment is obtained.

161.    TitleMax did not seek deficiency judgments or other judgments against Disposition Subclass.

162.    TitleMax wrongfully charged or collected interest that accrued after default but before any final judgment was obtained.

163.    Section 408.555 prohibits TitleMax from accelerating the maturity of the unpaid balance or otherwise enforcing its security interest until the notice required by § 408.554 is given.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

164.    TitleMax failed to give Jones and the Disposition Subclass the notice required by § 408.554 before it accelerated the maturity of the unpaid balances under the Title Loan Agreements.

165.    TitleMax failed to give Jones and the Class the notice required by § 408.554 before it sold the collateral secured by the Title Loan Agreements.

166.    TitleMax wrongfully accelerated the maturity of the unpaid balances under the Title Loan Agreements.

167.    TitleMax wrongfully sold the collateral secured by the Title Loan Agreements.

168.    TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

169.    As a direct and proximate result of TitleMax's wrongful charge and collection of interest, wrongful acceleration and disposition, and failure to send the requisite notices, Jones and the Disposition Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

a.      Wrongfully collected amounts of interest.

b.      The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

c.      Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

d.      Paying excess interest and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

e. Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

f. Paid fees and incurred costs besides the principal on the loan.

g. Harm caused by defamation, slander and libel.

h. Harm caused by invasion of privacy.

i. Other uncertain and hard-to-quantify actual damages.

170. Jones and the Disposition Subclass are entitled to attorney's fees under § 408.562.

171. Jones and the Disposition Subclass are entitled to punitive damages under § 408.562.

172. Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

### Count V – UCC Violations
### (Disposition Subclass)

173. Jones repeats the allegations set forth above as if set forth in Count V.

174. TitleMax violated the UCC by failing to send the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans between TitleMax and the Disposition Subclass.

175. Alternatively, TitleMax violated the UCC by sending presale notices to Jones and the Disposition Subclass that included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

176. As required under § 9-611 of the UCC, TitleMax failed to provide "reasonable authenticated notice of disposition" to Jones and the Disposition Subclass.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

177.   TitleMax did not send post-sale notices, or any other explanation or writing, to Jones and the Disposition Subclass providing all the information, in the requisite order, as required by § 9-616 of the UCC.

178.   If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

    a.   do not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);

    b.   do not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the surplus, as required by § 400.9-616(a)(1)(C); and

    c.   misstate the aggregate obligation (as required by § 400.9-616(c)(1)) and the deficiency or surplus (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances that had not become due and interest and charges prohibited by law.

179.   Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for Jones and the Disposition Subclass.

180.   TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

181.   TitleMax's violation of Chapter 400 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

182.   As a direct and proximate result of TitleMax's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Jones and the Disposition Subclass

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

     a.     Harm caused by defamation, slander, and libel.

     b.     Harm caused by invasion of privacy.

     c.     Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

     d.     Other uncertain and hard-to-quantify actual damages.

### Count VI – MMPA
### (Disposition Subclass)

183.     Jones repeats the allegations set forth above as if set forth in Count V.

184.     TitleMax provided financial credit services to Jones and the Disposition Subclass for primarily personal, family, household or consumer purposes.

185.     In acting against Jones and the Disposition Subclass as alleged above, TitleMax used and employed methods, acts and practices declared unlawful by the MMPA, including:

     a.     Charging and collecting interest prohibited by § 408.553.

     b.     Failing to send or sending, allowing or authoring defective, deceptive and legally insufficient right to cure, presale and post-sale notices.

     c.     Failing to send or sending, allowing or authoring defective, deceptive and legally insufficient Right to Cure Notices.

     d.     Violating Chapters 400 and 408.

186.     TitleMax's actions against Jones and the Disposition Subclass were unfair, deceptive or unconscionable practices, all in violation of the MMPA and 15 C.S.R. § 60-8.020.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

187.    TitleMax's violation of Chapters 400 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

188.    TitleMax's violation of Chapters 400 and 408 offends the laws of this state intended to protect the public and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

189.    TitleMax's violation of Chapters 400 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

190.    TitleMax's actions caused ascertainable loss of money and property to Jones and the Disposition Subclass, including:

      a.    Wrongfully collected amounts of interest.

      b.    The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

      c.    Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

      d.    Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

      e.    Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

      f.    Paid fees and incurred costs besides the principal on the loan.

      g.    Other uncertain and hard-to-quantify actual damages.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

191.    TitleMax's actions caused substantial injury to Jones and the Disposition Subclass.

192.    TitleMax's acts and conduct alleged above were done in reckless disregard of of Jones' and the Disposition Subclass's legal rights and Missouri law, such that assessment of punitive damages against TitleMax is warranted to ensure that the purposes of the MMPA – to preserve fundamental honesty, fair play and right dealings in public transactions – are promoted and that violations do not go unpunished or unremedied.

193.    Under the MMPA, Jones and the Disposition Subclass may recover actual damages, punitive damages, reasonable attorney's fees, injunctive and other equitable relief against TitleMax.

### Prayer for Relief

WHEREFORE, Jones prays this Court certify the Class and Disposition Subclass and enter a judgment for Jones and the classes against TitleMax:

a.  Declaring the Title Loan Agreements and liens were entered into contrary to Missouri title loan law and are void under §§ 367.527.1.7 and 367.527.2.

b.  A preliminary and permanent injunction enjoining TitleMax from engaging in the practices alleged, including without limitation, enjoining TitleMax from negotiating, soliciting or offering loans secured by a motor vehicle title that do not comply with §§ 367.500 to 367.533.

c.  Ordering TitleMax disgorge all money collected on the Title Loan Agreements that exceeded the original Amount Financed or $5,000, whichever is less, including money collected by disposition of the motor vehicles.

d.  Declaring TitleMax's arbitration clause is unconscionable, against Missouri public policy, and unenforceable.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

e. Awarding actual damages not less than the minimum damages provided by § 400.9-625(c)(2).

f. Statutory damages of $500 for each defective post-sale notice sent.

g. Prejudgment and post-judgment interest.

h. Punitive damages.

i. Attorney's fees.

j. For such other and further relief as this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____

Martin L. Daesch #40494
Jesse B. Rochman, #60712
600 Washington Avenue – 15th Floor
St. Louis, MO  63101
(314) 231-3332
(314) 241-7604 Facsimile
mdaesch@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorneys for Timothy H. Jones*

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

07/01/2015  17:15   6365282805                    TROY UPS STORE                        PAGE  08/10

# 1522-CC10212

## CONSUMER INSTALLMENT LOAN AGREEMENT

No.: 22372914                                                                    Date: 8/18/2012

| Borrower & Co-Borrower Information | ACCOUNT NUMBER: 22372914 | | |
|---|---|---|---|
| FIRST NAME TIMOTHY | LAST NAME JONES | CO-BORROWER FIRST NAME | CO-BORROWER LAST NAME |
| SSN XXX-XX-2979 | DRIVERS LIC/STATE ID. NO. N137172005 | CO-BORROWER SSN | CO-BORROWER'S DRIVERS LIC/STATE ID. NO. |
| STREET ADDRESS 211 DELL CT | | CO-BORROWER STREET ADDRESS | |
| CITY TROY | STATE MISSOURI | ZIP CODE 68379 | CO-BORROWER CITY | CO-BORROWER STATE | CO-BORROWER ZIP CODE |
| HOME PHONE (314) 746-2307 | DATE OF BIRTH 3/22/1983 | CO-BORROWER HOME PHONE | CO-BORROWER DATE OF BIRTH |

| Motor Vehicle & Lender Information | LENDER'S HOURS OF OPERATION: Monday to Friday  8  A.M. to  7  P.M., Saturday  10  A.M. to  4  P.M., Closed Sunday |
|---|---|
| LICENSE NUMBER 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 | LENDER NAME TitleMax of Missouri, Inc. d/b/a TitleMax | LENDER PHONE NUMBER (636) 462-7487 |
| LENDER STREET ADDRESS 180 MAGEE STREET | LENDER CITY TROY | LENDER STATE MISSOURI | LENDER ZIP CODE 63379 |
| MOTOR VEHICLE CERTIFICATE OF TITLE NUMBER  CA100148 | TITLE STATE MISSOURI | VEHICLE IDENTIFICATION NUMBER (VIN) 1D7KU28C73J505582 | ODOMETER 244976 | LICENSE PLATE 1ST2FI |
| VEHICLE YEAR 2003 | VEHICLE MAKE DODGE | VEHICLE MODEL RAM 2500 | DOORS 4D | CYLINDERS 08 | COLOR GREY |

In this Consumer Installment Loan Agreement (hereinafter the "Loan Agreement"), the words "you" and "your" mean the borrower(s) obtaining a loan for personal, family, or household purposes who have signed it. The words "Motor Vehicle" mean the motor vehicle listed above. The words "we", "us" and "our" mean TitleMax of Missouri, Inc. d/b/a TitleMax, a consumer installment lender, which has obtained a certificate of registration under R.S.Mo. §367.100 et seq. and regulated by the Missouri Division of Finance, P O Box 716, Jefferson City, MO 65102-0716. The phone number for the Department is (573)-751-3463, and the website for the Department is http://www.missouri-finance.org.

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 119.9918 % | $ 8,377.95 | $ 5,013.50 | $ 13,391.45 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due: |
|---|---|---|
| 23 | $557.97 | Monthly Beginning On 9/18/2012. |
| 1 | $568.14 | 8/18/2014 |

**Security** You are giving a security interest in the Motor Vehicle.
**Prepayment.** If you pay off early, you will not have to pay a penalty.
See your contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties.

Itemization of Amount Financed of $ 5,013.50

$ 5,000.00      Amount given to you directly.
$ 0.00          Amount paid on account no. _____ with us.
Amount paid to others on your behalf
$ 13.50         to public officials
$ 0.00          to _____

**PROMISE TO PAY.** You promise to pay us $ 5,013.50   (the principal amount of this loan) plus interest from the date of this Loan Agreement on the unpaid principal balance of the loan at the rate of 119.99 % per annum (the "Contract Rate"). You agree to pay a fee in the amount of $ 13.50   as authorized by Section 408.140.1(2) of the Missouri Statutes which is the amount paid to public officers for filing or recording an instrument securing the loan in the proper public office. You agree to make your payments in the amounts and on the dates set forth in the Payment Schedule above ("Payment Dates") at the office listed above or at such other address as we direct you in writing. Interest shall be computed upon the principal balance outstanding from the date of this Loan Agreement, by using the simple interest method until 8/18/2014   (the "First Payment Date"). The Finance Charge, which consists only of simple interest, has been computed upon the basis that you will pay all installments on the scheduled Payment Dates. If any installment is received later than the scheduled Payment Date, you will be obligated to pay such additional amounts as may become payable by reason of the accrual of interest calculated daily upon the unpaid principal balance of the loan. In the event that any installment is made in advance of the scheduled Payment Date, the interest charges will be reduced accordingly. The amount of this decrease or increase will be reflected in the final payment. All payments will be applied first to any interest owing, then to any charges owing to us, and finally to the unpaid principal amount. We do not accept personal checks.
**PREPAYMENT.** You may prepay in whole or in part at any time the amount due under this Loan Agreement and will not incur any additional charge, fee or penalty. However, we will rebate and refund the finance charge we have earned and any fees to be paid to public officials, if at any time you repay.

Any comments or questions may be directed to Customer Service at the following toll-free number: (800) 804-5368

TM-MO-Customer Agr-V.1.0-06.24.2010                                              Page 1 of 3

# EXHIBIT A

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## ADDITIONAL TERMS AND CONDITIONS

time prior to the close of business on the business day immediately following the date of this Loan Agreement, you prepay to us in cash the Amount Financed in full satisfaction of your obligations under this Loan Agreement. For the purposes of this Loan Agreement, Saturdays, legal holidays, and other days that we are not open until 6:00 PM are not considered business days.

**SECURITY AGREEMENT.** To secure your obligations under this Loan Agreement, you grant us a security interest in the Motor Vehicle, all accessories and accessions to the Motor Vehicle, and all proceeds related thereto, including insurance proceeds. You grant us full authority to perfect our security interest in your Motor Vehicle, by delivering certificate of title to us, and allowing us to note our lien on the certificate of title. We will hold the certificate of title until you timely satisfy the loan by paying the full amount due under this Loan Agreement, at which time we will release our lien and return the certificate of title to you. Provided that you are not in default, you may retain physical possession, ownership, and use of the Motor Vehicle. You agree to notify us of any change in the location where you reside or keep the Motor Vehicle not later than ten days after such change of location occurs. You agree to keep the Motor Vehicle in good order and repair, and not to sell or otherwise transfer, lease or rent the Motor Vehicle to any person, and not to abuse, waste or destroy the Motor Vehicle or permit the Motor Vehicle to remain in the possession of any other person for a period of ten days or more without our prior express consent in writing. You agree not to grant a security interest in the Motor Vehicle to any other person or entity. During the terms of the Loan Agreement, you agree to pay when due all taxes, assessments, charges, liens and encumbrances levied or placed on the Motor Vehicle. Upon payment of your obligations hereunder, we will restore, cancel and release our security interest.

**DEFAULT.** You will be in default under this Loan Agreement if you fail to timely pay any amount owing under this Loan Agreement. If you are in default, then we may give you notice of your right to cure such default as required by R.S.Mo. §408.554. If you fail to cure such default, then pursuant to R.S.Mo. §408.555, we may: (i) declare the entire outstanding principal balance plus all accrued and unpaid interest that you owe under this Loan Agreement at once due and payable, (ii) proceed to obtain possession of the Motor Vehicle, and (iii) foreclose upon the Motor Vehicle. Time is of the essence under this Loan Agreement. Upon default you may voluntarily deliver the Motor Vehicle to our office at the address listed above on a business day from the hours of 9 a.m. to 6:00 p.m. Monday through Friday and 10:00 a.m. to 2:00 p.m. on Saturdays, however hours may be adjusted on holidays. Upon acceleration of the principal balance plus accrued interest, interest will continue to accrue only on the principal balance owing at the contract rate until the date of final judgment or the Final Payment Date, whichever is earlier. Thereafter, pursuant to R.S.Mo. §408.553, simple interest will continue to accrue at the rate of 119.88% per annum on the principal. If it is necessary to bring suit, you agree to pay our attorney's fees not to exceed 15% of the amount due and payable under this Loan Agreement, together with any court costs assessed. Pursuant to R.S.Mo. §408.140.(6), you agree to pay reasonable towing costs and expenses of retaking, holding, preparing for sale, and selling any personal property in accordance with R.S.Mo. §400.9.

**WAIVER.** We may delay or refrain from enforcing any of our rights under this Loan Agreement without waiving such rights.

**GOVERNING LAW, ASSIGNMENT.** This Loan Agreement shall be governed by the laws of the State of Missouri, except that the Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("FAA"). We may assign or transfer this Loan Agreement or any of our rights hereunder.

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision), the information you gave us before entering into this Loan Agreement, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:
   (a) **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
   (b) **YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
   (c) **YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Any comments or questions may be directed to Customer Service at the following toll-free number: (800) 804-5368.

Case: 4:15-cv-01361-JAR   Doc. #: 1-1   Filed: 09/02/15   Page: 37 of 41 PageID #: 48

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## ADDITIONAL TERMS AND CONDITIONS

Arbitration Association (1-800-778-7879) http://www.adr.org, or JAMS (1-800-352-5267) http://www.jamsadr.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. If the arbitration associations listed above are not available and the parties cannot otherwise agree on a substitute, then any party may petition a court pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. sections 1-16 to select an arbitration organization, provided such arbitration organization shall enforce the terms of this Loan Agreement and the Arbitration Provision, including the prohibition on class arbitration. The party receiving notice of arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within twenty (20) days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Loan Agreement or the Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Loan Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any Arbitration Fees you have previously paid. If the arbitrator does not render a decision or an award in your favor resolving the dispute, then the arbitrator shall require you to reimburse us for the Arbitration Fees we have advanced, not to exceed the amount which would have been assessed as court costs if the dispute had been resolved by a state court with jurisdiction, less any Arbitration Fees you have previously paid. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. Furthermore, nothing in this Arbitration Provision shall limit the right of you or us (a) to foreclose against the Motor Vehicle by the exercise of any power under the Loan Agreement or under applicable law, (b) to exercise self-help remedies such as set off or repossession, or (c) to obtain provisional or ancillary remedies such as pre-judgment seizure of property, detinue, replevin, or injunctive relief, or to seek or obtain any other traditional equitable relief which does not claim money damages from a court having jurisdiction. The institution and maintenance by you or us of any action set forth in this Paragraph 6 shall not constitute a waiver of the right to submit any dispute to arbitration, including any counterclaim asserted.

7. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Missouri.

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been prepaid, paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

9. OPT-OUT PROCESS. You may choose to opt-out of this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within sixty (60) calendar days of the date of this Loan Agreement at the following address: Attn: Legal Dept, P.O. Box 8323, Savannah, GA 31412. Your written notice must include your name, address, Account number, the date of this Loan Agreement, and a statement that you wish to opt-out of the Arbitration Provision. If you choose to opt-out, then your choice will apply only to this Loan Agreement.

Please note that this Loan Agreement contains a binding Waiver of Jury Trial and Arbitration Provision, which limits your right to file suit against us. By signing this Loan Agreement you acknowledge that it was filled in before you did so and that you have received a completed copy of it. You agree that the information you provided to us prior to entering into this Loan Agreement is accurate. You acknowledge that you have the financial ability to repay the loan in the time and manner specified herein. You also warrant that you are not a debtor under any proceeding in bankruptcy, and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code. You acknowledge that you have read, understand, and agree to all the terms of this Loan Agreement, including the ADDITIONAL TERMS AND CONDITIONS set forth on Page 2 of 3 and Page 3 of 3 of this Loan Agreement which contains a "Waiver of Jury Trial and Arbitration Provision."

| | | | |
|---|---|---|---|
| _____ | _____ | TitleMax of Missouri, Inc. d/b/a TitleMax | |
| Borrower's Signature | Date | Its Authorized Agent | Date |
| | | | |
| _____ | _____ | | |
| Co-Borrower's Signature | Date | | |

**THIS DOCUMENT IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF, AND PLEDGED AS COLLATERAL TO, WELLS FARGO BANK, NATIONAL ASSOCIATION, AS COLLATERAL AGENT.**

Any comments or questions may be directed to Customer Service at the following toll-free number: (800) 804-5368

TM-MO-Customer Agr-v.1.0-06.24.2010                                                                    Page 3 of 3

**1522-CC10212**

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

# EXHIBIT B

In the 1980's, title lenders began appearing across the nation in states where the industry was allowed.[3] In the past two decades those states with loose or nonexistent standards have seen a surge in title lending.[4] In 2001, the Missouri State Auditor conducted a performance audit on the lending industry and at that time documented that there were 113 active title companies.[5] Currently, there are 297 active title lenders in Missouri.[6]

Title loans are short-term, high interest loans. Most loans have a 30 day term and are typically for small amounts (i.e. median minimum loan is $175 and median maximum loan is $2500).[7] These loans are most often made to people in desperate financial situations and are secured by the title to personal property, such as an automobile.[8] The lender imposes a lien on the vehicle and requires that the borrower to give the lender the original title and a copy of the key to the car.[9] While the borrower generally keeps the car

---

[3] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 9 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.
[4] *Id.* at 9
[5] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 8 (Mo. 2001).
[6] Missouri Division of Finance, Active Title Lender Licensee List, http://www.missouri-finance.org/upload/tl_list_906.pdf (Last Accessed October 18, 2006).
[7] Jean Ann Fox & Elizabeth Guy, Driven into Debt: CFA Car Title Loan Store and Online Survey 11 (2005), http://www.consumerfed.org/pdfs/Car_Title_Loan_Report_111705.pdf.
[8] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 3 (Mo. 2001).
[9] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 4 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

during the loan, in the event of a default, the lender repossesses the car using the key provided by the borrower. [10]

Many times, if the borrower is unable to pay the loan in full on the maturation date, the lender will advise the borrower to "renew" the loan.[11] This renewal also incurs additional charges.[12] The Auditor's Report provides a real life example:

> A consumer obtained a title loan for $900 on July 7, 2000, renewed the loan 3 times paying $902 in interest and fees, but made no reductions in the principal amount. The consumer obtained this loan against her 1993 Buick Century. She was 67 years old, living on a fixed income, and as of October 2000, her loan was still open. She has already paid the equivalent of the loan value in fees, and still owes the $900. This practice will continue until the consumer starts paying on the principal. In this example, the consumer is 'hanging on' by paying fees but has still not been able to satisfy the loan.[13]

This example illustrates that individuals who cannot come up with the whole loan amount often pay, in interest and fees alone, far more than the original value of the loan because of the "renewal" process. In Missouri, "on average, title...lenders make 3.5 more renewal loans than new loans each month." [14]

Title loan borrowers are generally people on low or fixed incomes. The Missouri Auditor's report documented that 70% of title and payday loan consumers earned less than $25,000 per year.[15] For many people, their vehicle is their only meaningful asset; it is a necessary means for obtaining and maintaining employment. As one research study points out, "Lack of transportation is widely recognized as one of the significant barriers to obtaining and maintaining employment, and for many title loan borrowers, public

---

[10] *Id.* at 4
[11] *Id.* at 6
[12] *Id.* at 4
[13] Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 4 (Mo. 2001).
[14] *Id.*
[15] *Id.* at 3

31

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

transportation is simply not available or not an acceptable substitute for a private vehicle." [16] Because title loans put borrowers in debt at high interest rates while placing their vehicle at risk, they have come under intense criticism throughout the nation.

For example, in Iowa, Governor Tom Vilsack has called for reforms and has characterized title loans as abusive lending. [17] The National Credit Union Administration has issued a formal declaration to federal credit union officials stating, "Title companies are urging financial institutions to participate in these ventures (title lending). The NCUA wants to caution credit unions that funding arrangements with title loan companies introduce several risks to the financial stability and reputation of the credit union." [18] Consumer groups have joined in the cry for reform. The Center for Responsible Lending has stated, "Title lenders . . . should not be permitted to operate in the dark and out of the public eye. State lawmakers, regulators and the public will benefit from closer scrutiny of the car title lending industry..." [19]

In response to the dangers posed by title loans, the Missouri legislature has attempted to afford protection to those borrowing from title lenders. [20] *Missouri Revised Statute* 367.518.1.4 requires that the monthly interest rate charged be disclosed on the loan agreement. *Missouri Revised Statute* §367.518.1.5 requires a statement providing the

---

[16] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 8 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.
[17] Car Title Loan Reform http://iowasenatedemocrats.org/Issues/cartitle/default.html (Last accessed October 18, 2006).
[18] National Credit Union Administration Letter http://www.in.gov/dfi/policies/CU/03-FCU-06.pdf (Last Accessed October 18, 2006).
[19] Amanda Quester & Jean Ann Fox, *Car Title Lending Driving Borrowers to Financial Ruin* 20 (2005), http://www.responsiblelending.org/issues/cartitle/reports/page.jsp?itemID=28012462.
[20] All statutes and interpretations referred to are reproduced in the section of this *Petition* entitled, "Referenced Statutes and Interpretations."

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

borrower the right to cancel the loan without any costs by the close of the next business day. *Missouri Revised Statute* §367.518.1,6 requires the disclosure of the hours and location where the titled personal property may be delivered. *Missouri Revised Statute* §367.512.4 requires that upon the third renewal of the loan and all subsequent renewals, the principal be reduced by 10% until the loan is paid in full. *Missouri Revised Statute* §367.525.1 requires title lenders to provide specific statutory notice to borrowers before entering into the contract. *Missouri Revised Statute* §367.525.4 requires title lenders to consider the financial ability of the borrower to reasonably repay the loan in the time and manner specified before making the loan. *Missouri Revised Statute* §367.527,1.3 prohibits a title lender from requiring a waiver of any right or protection of a borrower. *Missouri Revised Statute* §367.527.1.7 provides that a title lender shall not knowingly violate any sections under the Title Loan Section. *Missouri Revised Statute* §367.527.2 and §367,506.2 provides that if a title lender enters into a transaction in violation of the above statutes, then the lien and loan are void and that the borrower's only liability is for the principal.