**1522-CC10212**

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## TWENTY-SECOND JUDICIAL CIRCUIT COURT
## ST. LOUIS CITY, MISSOURI

TIMOTHY H. JONES,

    Plaintiff,

v.

TITLEMAX OF MISSOURI, INC.,
**Serve:**
**C T CORPORATION SYSTEM**
**120 South Central Avenue**
**Clayton, MO 6310**

    Defendant.

Case No.
Division:

**JURY TRIAL DEMANDED**

### Petition

    Plaintiff Timothy H. Jones ("Jones"), through his attorneys Sandberg Phoenix & von

Gontard PC, sues Defendant TitleMax of Missouri, Inc. ("TitleMax"):

### Table of Contents

Nature of Case........................................................................................................................ 2

Parties..................................................................................................................................... 2

Jurisdiction and Venue........................................................................................................... 3

Organizational Structure of TitleMax.................................................................................... 3

Title Loans ............................................................................................................................. 4

TitleMax's Business............................................................................................................... 7

General Allegations ............................................................................................................. 10

Class Allegations ................................................................................................................. 15

Count I – Declaratory Judgment .......................................................................................... 18

Count II – Private Right of Action under Chapter 367......................................................... 21

Count III – Missouri Merchandising Practices Act ............................................................. 22

Count IV – Chapter 408 Violations ..................................................................................... 25

Count V – UCC Violations .................................................................................................. 27

Count VI – MMPA ............................................................................................................... 29

Prayer for Relief................................................................................................................... 31

1

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

**Nature of Case**

1.      This is a consumer class action against TitleMax seeking relief to redress an unlawful and deceptive pattern of wrongdoing conducted by TitleMax regarding the formation, collection, and enforcement of its title loan agreements and its disposition of the consumer property secured by the title loan agreements.

2.      TitleMax violated §§ 367.500 to 367.533 regarding its title loans with Jones and many other Missouri Consumers ("Title Loan Agreements"). The Title Loan Agreement entered into between TitleMax and Jones is attached as **Exhibit A**.

3.      TitleMax wrongfully accelerated the maturity of the unpaid balance under the Title Loan Agreements and otherwise wrongfully enforced its security interest under the Title Loan Agreements because TitleMax either failed to give the right to cure notice required by § 408.554 ("Right to Cure Notices") or gave defective Right to Cure Notices.

4.      TitleMax failed to send Jones and numerous other Missouri consumers a presale notice, which complied with the Uniform Commercial Code ("UCC") adopted by Missouri.

5.      TitleMax failed to send Jones and numerous other Missouri consumers a post-sale notice, which complied with the UCC.

6.      Jones sues for himself and all other similarly situated Missouri consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

**Parties**

7.      Jones is a resident of Troy, Missouri.

8.      TitleMax is a Delaware corporation, headquartered at 15 Bull Street, Suite 200, Savannah, Georgia 31401, which does substantial business in Missouri. TitleMax of Missouri, Inc. does business as TitleMax and TitleBucks.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

### Jurisdiction and Venue

9.     The Circuit Court of St. Louis City, Missouri has jurisdiction over this matter under Article V, § 14 of the Missouri Constitution and § 478.070 which grant Missouri circuit courts original jurisdiction over all civil cases and matters.

10.     Venue is proper in this Court under § 508.010 because TitleMax is not a resident of Missouri and does substantial business in St. Louis City.

### Organizational Structure of TitleMax

11.     The TitleMax family of companies includes: (1) TitleMax Finance Corp., (2) TMX Finance LLC, (3) TMX Finance Holdings Inc., (4) TitleMax Holdings, LLC, (5) TMXA, LLC, (6) TMX Credit, Inc., (7) TMX Investments, LLC., (8) TitleMax Funding, Inc., (9) TitleMax Management Services, Inc., and (10) TitleMax Construction, LLC.

12.     TMX Finance LLC has multiple wholly-owned operating subsidiaries set up in various states, including TitleMax of Alabama, Inc.; TitleMax of Arizona, Inc.; TitleMax of Georgia, Inc.; TitleMax of Illinois, Inc.; TitleMax of Mississippi, Inc.; TitleMax of Missouri, Inc.; TitleMax of Nevada, Inc.; TitleMax of S. Carolina, Inc.; TitleMax of Tennessee, Inc.; TitleMax of Texas, Inc.; and TitleMax of Virginia, Inc..

13.     Although the TitleMax family of companies may be registered as separate companies, in reality they all operate together as a single entity under the joint control of Tracy Young ("Young"), with no separation.

14.     Despite these multiple subsidiaries, TitleMax operates as a single entity, under the control of Young. There is no meaningful division or separation between the entities within the TitleMax family of companies.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

15.     All TitleMax stores, regardless of whether they may be owed by any subsidiary, are operated under a company-wide risk management system supported by district and regional managers all under the same central leadership of Mr. Young.

16.     Young is the founder, Chairman of the Board, Chief Executive Officer, President and the sole beneficial owner of TMX Finance LLC's parent holding company, TMX Finance Holdings Inc., and all other TitleMax companies. He is also the CFO and the Secretary.

17.     Young controls substantially all matters of significance to all TitleMax companies, including the strategic direction of their business; the election and removal of their managers; the appointment and removal of their officers; the approval or rejection of a sale, merger, consolidation or other business combination; the issuances of additional equity or debt securities; amendments of its organizational documents; and the entering into of related party transactions and the dissolution and liquidation.

18.     TMX Finance LLC's principal corporate office is at 15 Bull Street, Suite 200, Savannah, Georgia 31401. This is the same address listed by the Missouri Secretary of State's records for TitleMax of Missouri, Inc., and on information and belief, the same address for the other TitleMax companies.

19.     TitleMax has over 1,400 company-owned stores in 17 states (Alabama, Arizona, California, Delaware, Georgia, Illinois, Mississippi, Missouri, Nevada, New Mexico, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin).

### Title Loans

20.     Title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-clear.

21.     Title loans are traditionally offered as single-payment loans with one-month terms, which are often renewed multiple times.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

22.     An emerging practice is a movement toward title loans that are longer-term, high-cost installment products.

23.     Title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often higher than 200%.

24.     A typical borrower on a title loan pays twice as much in interest and fees than the borrower receives in credit extended.

25.     Nationally, car title lending drains $4.3 billion annually in excessive fees.

26.     Title lenders engage in asset-based lending (making loans without evaluating the borrower's ability to repay the loan). Instead, lenders base whether and how much to lend on the value of the collateral.

27.     Car-title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

28.     A typical car-title loan requires no credit check, and lenders rarely ask about monthly expenses or debts. Some do not ask about income or require that the borrower have a bank account.

29.     Rather than properly underwriting the loans based on a borrower's income and obligations, lenders protect themselves from loan losses by lending only a small percentage (about one-quarter) of the car's consumer resale value (commonly known as "Blue Book" value) and repossessing the vehicle if default occurs.

30.     Title lenders generally have no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments. Ability to repay is not part of the underwriting process. Because some lenders lend at a small percentage of the

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

car's value, title lenders can rely on selling the car if the borrower stops making the monthly payments.

31.     Title lenders systematically disregard a borrower's ability to repay, as demonstrated through at least three modes: lenders' advertising and marketing, industry data and statements, and negative consumer outcomes—namely, repeat loan refinancings and vehicle dispositions.

32.     An analysis of the records from 561 auto title borrowers shows the median loan size was $845, the median car value (Blue Book value) was $3,150, the median loan-to-value ratio was 26% and the median APR was 300%.[1]

33.     The Missouri Auditor's report documented that 70% of title and payday loan consumers earned less than $25,000 per year.[2]

34.     Half of all car-title borrowers are unbanked, lacking access to both mainstream and subprime credit.[3]

35.     For consumers living paycheck to paycheck, the short timeframe of these loans can make it difficult to accumulate the necessary funds to pay off the loan principal and fees before the due date.[4]

36.     Borrowers who cannot repay are often encouraged to roll over the loan -- pay more fees to delay the due date or take out a new loan to replace the old one.[5]

37.     For many borrowers, what starts out as a short-term, emergency loan turns into an unaffordable, long-term debt trap.[6]

---

[1]   Claire McCaskill, State Auditor, Performance Audit Report No. 2001-36, at 4 (Mo. 2001).
[2]   http://www.responsiblelending.org/state-of-lending/reports/7-Car-Title-Loans.pdf.
[3]   *Id.*
[4]   http://www.consumerfinance.gov/newsroom/cfpb-considers-proposal-to-end-payday-debt-traps/
[5]   *Id.*
[6]   *Id.*

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

38.     In Missouri, "on average, title . . . lenders make 3.5 times more renewal loans

than new loans each month."[7]

39.     The 2001 Missouri Auditor's Report provides a real life example:

A consumer obtained a title loan for $900 on July 7, 2000, renewed the loan 3
times paying $902 in interest and fees, but made no reductions in the principal
amount. The consumer obtained this loan against her 1993 Buick Century. She
was 67 years old, living on a fixed income, and as of October 2000 her loan was
still open. She has already paid the equivalent of the loan value in fees, and still
owes the $900. This practice will continue until the consumer starts paying on the
principal. In this example, the consumer is "hanging on" by paying fees but has
still not been able to satisfy the loan.

40.     Additional history on title loans and lenders is attached as **Exhibit B.**

## TitleMax's Business

41.     TitleMax acts as a title lender without a title loan license.

42.     TitleMax offers to lend money at high rates of interest, with its title loans secured

by titles to consumer's motor vehicles.

43.     TitleMax is one of the nation's largest title lending companies, providing over

2,500 consumers title loans every day.[8]

44.     TitleMax specializes in motor vehicle title loans, which it advertises as "a fast and

easy way to get cash using your car title instead of your credit score."[9,10]

45.     TitleMax markets its loans as "title loans." [11,12]

46.     TitleMax markets itself as a title lender that issues title loans. [13,14]

---

[7] The 2001 Missouri Auditor's Report, at 3.
[8] https://www.titlemax.com/about-us/
[9] https://www.titlemax.com/about-us/
[10] https://www.titlemax.com/title-loans/
[11] https://www.titlemax.com/about-us/
[12] https://www.titlemax.com/title-loans/
[13] https://www.titlemax.com/about-us/
[14] https://www.titlemax.com/title-loans/

Electronically Filed - City of St. Louis - July 24, 2015 - 12:08 PM

47.    TitleMax has submitted business applications in Missouri listing "Title Loans" as one of its types of business and "Title Lending" as the nature of its business.

48.    TitleMax's parent company has stated in Missouri, title loans receivable comprise 24-month title loans with payments of principal and interest due monthly.

49.    TitleMax's parent company has stated TitleMax is a wholly-owned title lending subsidiary.

50.    TitleMax's title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-clear.

51.    TitleMax title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often as high as 200%, if not more.

52.    TitleMax advertises that it makes the "title lending process simple" and it will determine a title loan amount based upon the consumer's need and the appraised value of the vehicle.[15]

53.    TitleMax advertises that consumers are eligible for title loans even if they have bad credit or no credit.[16]

54.    TitleMax has stated that "All underwriting decisions are made based on the appraised wholesale value of a customer's vehicle rather than credit score."[17]

55.    TitleMax engages in asset-based lending, basing whether and how much to lend on the value of the collateral.

56.    TitleMax's title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

---

[15] https://www.titlemax.com/faqs/
[16] https://www.titlemax.com/faqs/
[17] http://www.sec.gov/Archives/edgar/data/1511966/000119312511107453/d424b1.htm

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

57.     TitleMax requires no credit check, and rarely asks about monthly expenses or debts.

58.     TitleMax's borrowers have zero power to negotiate the Title Loan Agreements, including a reasonable interest rate or the waivers of their rights and protections, and will pay whatever amount TitleMax charges.

59.     TitleMax's Title Loan Agreements are non-negotiable and difficult for the average consumer to understand

60.     On information and belief, no consumer has ever successfully renegotiated the standard terms of TitleMax's Title Loan Agreements.

61.     Rather than properly underwriting the loans based on a borrower's income and obligations, TitleMax protects itself from loan losses by lending only a small percentage of the conservative wholesale value of the customer's automobile in the Black Book, as opposed to the higher retail value in the Black Book.

62.     TitleMax has no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments.

63.     Ability to repay is not part of the underwriting process for TitleMax.

64.     Because TitleMax lends at a small percentage of the car's value, TitleMax relies on selling the car if the borrower stops making the monthly payments.

65.     TitleMax's typical car title loan is refinanced eight times according to testimony given by a former president of TitleMax.

66.     TitleMax relies on loan renewals as underpinning its business structure.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

67. TitleMax systematically disregards a borrower's ability to repay, as demonstrated through at least three modes: its advertising and marketing, industry data and statements, and negative consumer outcomes—namely, repeat loan refinancings and vehicle dispositions.

## General Allegations

68. Jones obtained a title loan from TitleMax secured by his motor vehicle title.

69. Jones' Title Loan Agreement (Exhibit A) provided a loan of $5,013.50 ("Amount Financed") with an annual percentage rate of 119.9916%. The Title Loan Agreement required 23 monthly payments of $557.97 and one final monthly payment of $558.14. If each of the payments were made as scheduled, Jones would pay over $5,377 in interest ("Finance Charge").

70. Jones' Title Loan Agreement required him to deliver title of his motor vehicle to TitleMax and allow TitleMax to note its lien on the certificate of title.

71. Jones' Title Loan Agreement provided that TitleMax would hold the certificate of title until Jones timely satisfied the title loan by paying the amount due under the Title Loan Agreement, at which time TitleMax would release its lien and return the certificate of title to Jones.

72. Jones' Title Loan Agreement provided that if the consumer defaulted, upon acceleration of the principal balance plus accrued interest, interest will continue to accrue only on the principal balance owing at the contract rate until final judgment.

73. The Title Loan Agreement entered into by Jones is a standardized form and is the same or similar to the Title Loan Agreements entered into by each member of the Class (defined below).

74. The Title Loan Agreement was entered into for personal, family, or household purposes and the motor vehicle was used for personal, family, or household purposes.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

75.     Jones and each member of the Class who entered into a Title Loan Agreement with TitleMax were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

76.     For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

a.      As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

e.     As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.     As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.     As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

h.     As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

i.     As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.     As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

k.     Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

l.     Otherwise failed to provide all required notices to Jones and the Class.

m.     Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

77.     TitleMax knowingly violated §§ 357.500 to 367.533 in violation of § 367.527.

78.     TitleMax violated §§ 357.500 to 367.533 when conducting transactions with Jones' and the Class, rendering the Title Loan Agreements void under § 367.527.2.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

79.     After Jones and the Class missed a payment under the Title Loan Agreement, TitleMax either failed to give them a Right to Cure Notice or gave a defective Right to Cure Notice that included misleading or incorrect information.

80.     TitleMax accelerated the balances due on Jones' and the Class's Title Loan Agreements without giving the required Right to Cure Notices.

81.     After default, TitleMax continued to charge Jones and the Class interest at the rate in the Title Loan Agreements before obtaining a final judgment in violation of § 408.553.

82.     TitleMax or someone at TitleMax's direction sold the motor vehicles secured by the Title Loan Agreements without giving the required Right to Cure Notices.

83.     Under § 408.555, TitleMax wrongfully accelerated Jones' and the Class's Title Loan Agreements by failing to give the required Right to Cure Notices before acceleration.

84.     Under § 408.555, TitleMax wrongfully enforced its security interest under the Title Loan Agreements with Jones and the Class, by among other things, selling their motor vehicles before giving the required Right to Cure Notices.

85.     TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

86.     TitleMax or someone at TitleMax's direction either failed to send or sent defective presale notices to Jones and the Class advising them of TitleMax's intent to dispose of their motor vehicles.

87.     If presale notices were sent, they were not reasonable as required by § 400.9-611(b) because the presale notices were misleading because, among other reasons, Jones and the Class were not required to pay any amount to get their motor vehicles back.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

88.     TitleMax failed to send Jones and the Class reasonable authenticated notices of disposition as required by § 400.9-611.

89.     TitleMax or someone at TitleMax's direction disposed of Jones' and the Class's motor vehicles without sending or after sending defective Right to Cure Notices and presale notices.

90.     After disposition, TitleMax or someone at TitleMax's either failed to send or sent defective post-sale notices to Jones and the Class explaining how it calculated their deficiency balances.

91.     If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

> a.  do not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);
>
> b.  do not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the surplus, as required by § 400.9-616(a)(1)(C); and
>
> c.  misstate the aggregate obligation (as required by § 400.9-616(c)(1)) and the deficiency or surplus (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances that had not become due and interest and charges prohibited by law.

92.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for Jones and the Class.

93.     TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

94.     TitleMax's violation of Chapter 400 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

95.     TitleMax's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Jones and the Class.

## Class Allegations

96.     Jones sues for himself and a class designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

97.     The Class comprises all persons who entered into a loan agreement with TitleMax at any location in Missouri, and the loan agreement was secured by a motor vehicle title.

98.     Disposition Subclass comprises those members of the Class whose motor vehicles were sold by or at the direction of TitleMax from July 24, 2009 to the present.

99.     The classes are believed to be so numerous that joinder of all members is impractical.

100.     There are questions of law and fact common to the classes.

101.     The principal legal questions common to Jones and each Class member are:

a.     Whether the title loans with TitleMax complied with disclosure, notice and consumer protection provisions of §§ 367.500 to 367.533.

b.     Whether the title loans with TitleMax are void.

c.     Whether Jones and the Class are entitled to punitive damages.

102.     The principal legal questions common to Jones and each Disposition Subclass member are:

a.     Whether TitleMax unlawfully charged and collected interest in violation of § 408.553.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

b.     Whether TitleMax failed to give Right to Cure Notices as required by §
408.554, and if not, whether the defective Right to Cure Notices make the presale and
post-sale notices defective if they were sent.

c.     Whether TitleMax failed to give presale notices as required by § 400.9-
611.

d.     Whether TitleMax failed to give post-sale notices as required by § 400.9-
616.

e.     Whether Jones and the Disposition Subclass are entitled to punitive
damages.

103.   Jones' claims are typical of the claims of the classes.

104.   Jones' claims are based on the same factual and legal theories as the classes'
claims.

105.   The violations alleged by Jones and the Class derive from written, form Title
Loan Agreements that violate §§ 367.500 to 367.533 in one or more of the same ways.

106.   The violations alleged by Jones and the Class derive from standard pattern of
conduct by TitleMax regarding its title loans that violates §§ 367.500 to 367.533.

107.   The violations alleged by Jones and the Disposition Subclass derive from a
standard pattern of conduct by TitleMax in failing to send Right to Cure Notices or sending
written, form Right To Cure Notices that fail to comply with §§ 408.554 and 408.555.

108.   The violations alleged by Jones and the Disposition Subclass derive from written,
form presale notices that fail to comply with the Missouri UCC.

109.   The violations alleged by Jones and the Disposition Subclass derive from written,
form post-sale notices that fail to comply with the Missouri UCC.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

110.    Jones and each member of the Class are entitled to a declaration that the Title Loan Agreements are void, actual damages equal to any amount paid to TitleMax beyond the original Amount Financed, and punitive damages.

111.    Jones and each member of the Disposition Subclass were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to TitleMax's unlawful collection of interest, and its failure to give proper Right to Cure Notices, presale notices and post-sale notices.

112.    Jones will fairly and adequately represent and protect the interests of the classes.

113.    Jones has no interests antagonistic to those of the classes.

114.    Jones' counsel is competent and experienced in consumer and class litigation.

115.    Jones and all class members have an interest in determining the adequacy of the Title Loan Agreements, Right to Cure Notices, presale notices and post-sale notices sent by TitleMax and to recover damages due to the statutorily defective Right to Cure Notices, presale notices and post-sale notices.

116.    The questions of law or fact common to the classes predominate over questions affecting only individual members.

117.    Jones and each member of the classes will rely on the same basic evidence (i.e., TitleMax's businesses model and marketing, the Title Loan Agreements, the form Right to Cure Notices, presale notices and post-sale notices).

118.    Determining the legality of the Title Loan Agreements resolves all Class members' claims because each Title Loan Agreement suffers from at least one of the same deficiencies as Jones' Title Loan Agreement.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

119. Determining the sufficiency of the Right to Cure Notices, presale notices and post-sale notices resolves all Disposition Subclass members' claims because TitleMax either failed to send these notices entirely or each notice sent to the Disposition Subclass members would suffer from at least one of the same deficiencies as any notices allegedly sent to Jones.

120. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

121. The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

122. A consumer probably could not retain counsel to pursue individual claims against TitleMax.

123. Most class members are probably unaware TitleMax violated their rights and the law.

124. If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

125. Concentrating the litigation of Jones' and the classes' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

126. The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

### Count I – Declaratory Judgment
### (Class)

127. Jones repeats the allegations set forth above as if set forth in Count I.

128. A justiciable controversy exists between TitleMax and the Class for which the Class has no adequate remedy at law.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

129.     TitleMax acts as a title lender without a title loan license.

130.     The Title Loan Agreements for the Class were all secured by title to the Class's motor vehicles.

131.     Sections 367.500 to 367.533 were enacted to protect the consumer borrower.

132.     The Title Loan Agreements represent transactions clearly within the spirit or reason of §§ 367.500 to 367.533, or within the evil which those statutes were designed to remedy.

133.     For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

    a.     As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

    b.     As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

    c.     As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

    d.     As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

returning the full principal amount to the lender by the close of the lender's next full business day."

    e.    As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

    f.    As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

    g.    As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

    h.    As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

    i.    As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

    j.    As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

    k.    Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

    l.    Otherwise failed to provide all required notices to Jones and the Class.

    m.    Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

    134.    TitleMax knowingly violated §§ 357.500 to 367.533 in violation of § 367.527.

    135.    TitleMax violated §§ 357.500 to 367.533 when conducting transactions with Jones' and the Class, rendering the Title Loan Agreements void under § 367.527.2.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

136.   Jones and the Class are not bound by the Title Loan Agreements.

137.   Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

### Count II – Private Right of Action under Chapter 367
### (Class)

138.   Jones repeats the allegations set forth above as if set forth in Count II.

139.   Sections 367.500 to 367.533 protect consumer borrowers by requirement and proscription of certain conduct but provide no express civil remedy to persons injured by a title lenders failure to comply with sections 367.500 to 367.533.

140.   TitleMax violated §§ 367.500 to 367.533 when negotiating, offering, soliciting or entering into the Title Loan Agreements with Jones and the Class.

141.   As a direct and proximate result of TitleMax's failure to comply with the requirements of §§ 367.500 to 367.533, Jones and the Class suffered actual damages, including:

   a.     Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

   b.     Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

   c.     Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

   d.     Paid fees and incurred costs besides the principal on the loan.

   e.     Other uncertain and hard-to-quantify actual damages.

142.   Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

## Count III – Missouri Merchandising Practices Act
### (Class)

143.   Jones repeats the allegations set forth above as if set forth in Count III.

144.   This Count is brought under the Missouri Merchandising Practices Act ("MMPA"), §§ 407.010 *et seq.*

145.   Jones and the Class purchased services primarily for personal purposes, and suffered an ascertainable loss as the result of the use and employment by TitleMax of methods, acts and practices declared unlawful under Missouri law.

146.   Jones and the Class may bring this action under § 407.025.

147.   Jones and the Class entered into consumer transactions with TitleMax which involved the payment of interest and fees as a condition for obtaining short-term loans.

148.   Lending is included in the definition of "merchandise" under the MMPA.

149.   Jones' and the Class's loans were obtained exclusively for their personal use.

150.   During these transactions, TitleMax engaged in unfair or deceptive trade practices including the issuing of loans through unlawful trade practice, concealment, suppression, omission of, and the knowing failure to state, material facts, including:

a.      As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

b.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.      As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.      As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

h.      As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

i.      As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

  k. Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

  l. Otherwise failed to provide all required notices to Jones and the Class.

  m. Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

  n. TitleMax holds itself out to be a title lender issuing title loans, but asserts it is not a title lender, does not issue title loans, and is not required to disclose matters required for title loan transactions.

151. TitleMax willfully and intentionally violated the MMPA.

152. As a direct and proximate result of TitleMax's failure to comply with the the MMPA, Jones and the Class are aggrieved and have suffered ascertainable losses, including:

  a. Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

  b. Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

  c. Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

  d. Paid fees and incurred costs besides the principal on the loan.

  e. Other uncertain and hard-to-quantify actual damages.

153. TitleMax's violation of Chapters 367 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

154.     TitleMax's violation of Chapters 367 and 408 offends the laws of this state intended to protect the public and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

155.     TitleMax's violation of Chapters 367 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

156.     The MMPA provides the trial court may order an injunction or other equitable relief and reasonable attorney's fees.

157.     Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

### Count IV – Chapter 408 Violations
### (Disposition Subclass)

158.     Jones repeats the allegations set forth above as if set forth in Count IV.

159.     Section 408.553 prohibits a lender from charging or collecting interest after default until after a final judgment is obtained.

160.     Contrary to § 408.553, the Title Loan Agreements provide interest will continue to accrue on the Title Loan Agreements after default even if no final judgment is obtained.

161.     TitleMax did not seek deficiency judgments or other judgments against Disposition Subclass.

162.     TitleMax wrongfully charged or collected interest that accrued after default but before any final judgment was obtained.

163.     Section 408.555 prohibits TitleMax from accelerating the maturity of the unpaid balance or otherwise enforcing its security interest until the notice required by § 408.554 is given.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

164.    TitleMax failed to give Jones and the Disposition Subclass the notice required by § 408.554 before it accelerated the maturity of the unpaid balances under the Title Loan Agreements.

165.    TitleMax failed to give Jones and the Class the notice required by § 408.554 before it sold the collateral secured by the Title Loan Agreements.

166.    TitleMax wrongfully accelerated the maturity of the unpaid balances under the Title Loan Agreements.

167.    TitleMax wrongfully sold the collateral secured by the Title Loan Agreements.

168.    TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

169.    As a direct and proximate result of TitleMax's wrongful charge and collection of interest, wrongful acceleration and disposition, and failure to send the requisite notices, Jones and the Disposition Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

   a.    Wrongfully collected amounts of interest.

   b.    The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

   c.    Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

   d.    Paying excess interest and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

     e.     Violations of statutorily required notice and disclosure requirements in the

Title Loan Agreements.

     f.     Paid fees and incurred costs besides the principal on the loan.

     g.     Harm caused by defamation, slander and libel.

     h.     Harm caused by invasion of privacy.

     i.     Other uncertain and hard-to-quantify actual damages.

170.     Jones and the Disposition Subclass are entitled to attorney's fees under § 408.562.

171.     Jones and the Disposition Subclass are entitled to punitive damages under §

408.562.

172.     Jones and the Class request the Court enter judgment in their favor and against

TitleMax as described in the "Prayer for Relief."

### Count V – UCC Violations
### (Disposition Subclass)

173.     Jones repeats the allegations set forth above as if set forth in Count V.

174.     TitleMax violated the UCC by failing to send the presale notice in the form and

manner required under the UCC before disposing of collateral secured by loans between

TitleMax and the Disposition Subclass.

175.     Alternatively, TitleMax violated the UCC by sending presale notices to Jones and

the Disposition Subclass that included additional language or content not authorized or allowed

by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-

614 of the UCC.

176.     As required under § 9-611 of the UCC, TitleMax failed to provide "reasonable

authenticated notice of disposition" to Jones and the Disposition Subclass.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

177.    TitleMax did not send post-sale notices, or any other explanation or writing, to Jones and the Disposition Subclass providing all the information, in the requisite order, as required by § 9-616 of the UCC.

178.    If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

    a.    do not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);

    b.    do not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the surplus, as required by § 400.9-616(a)(1)(C); and

    c.    misstate the aggregate obligation (as required by § 400.9-616(c)(1)) and the deficiency or surplus (as required by §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances that had not become due and interest and charges prohibited by law.

179.    Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for Jones and the Disposition Subclass.

180.    TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

181.    TitleMax's violation of Chapter 400 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

182.    As a direct and proximate result of TitleMax's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Jones and the Disposition Subclass

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

      a.    Harm caused by defamation, slander, and libel.

      b.    Harm caused by invasion of privacy.

      c.    Violations of statutorily required notice and disclosure requirements in the

Title Loan Agreements.

      d.    Other uncertain and hard-to-quantify actual damages.

### Count VI – MMPA
### (Disposition Subclass)

183.    Jones repeats the allegations set forth above as if set forth in Count V.

184.    TitleMax provided financial credit services to Jones and the Disposition Subclass for primarily personal, family, household or consumer purposes.

185.    In acting against Jones and the Disposition Subclass as alleged above, TitleMax used and employed methods, acts and practices declared unlawful by the MMPA, including:

      a.    Charging and collecting interest prohibited by § 408.553.

      b.    Failing to send or sending, allowing or authoring defective, deceptive and

legally insufficient right to cure, presale and post-sale notices.

      c.    Failing to send or sending, allowing or authoring defective, deceptive and

legally insufficient Right to Cure Notices.

      d.    Violating Chapters 400 and 408.

186.    TitleMax's actions against Jones and the Disposition Subclass were unfair, deceptive or unconscionable practices, all in violation of the MMPA and 15 C.S.R. § 60-8.020.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

187.     TitleMax's violation of Chapters 400 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

188.     TitleMax's violation of Chapters 400 and 408 offends the laws of this state intended to protect the public and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

189.     TitleMax's violation of Chapters 400 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

190.     TitleMax's actions caused ascertainable loss of money and property to Jones and the Disposition Subclass, including:

a.     Wrongfully collected amounts of interest.

b.     The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

c.     Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

d.     Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

e.     Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

f.     Paid fees and incurred costs besides the principal on the loan.

g.     Other uncertain and hard-to-quantify actual damages.

Electronically Filed - City of St. Louis - July 24, 2015 - 12:06 PM

191. TitleMax's actions caused substantial injury to Jones and the Disposition Subclass.

192. TitleMax's acts and conduct alleged above were done in reckless disregard of of Jones' and the Disposition Subclass's legal rights and Missouri law, such that assessment of punitive damages against TitleMax is warranted to ensure that the purposes of the MMPA – to preserve fundamental honesty, fair play and right dealings in public transactions – are promoted and that violations do not go unpunished or unremedied.

193. Under the MMPA, Jones and the Disposition Subclass may recover actual damages, punitive damages, reasonable attorney's fees, injunctive and other equitable relief against TitleMax.

### Prayer for Relief

WHEREFORE, Jones prays this Court certify the Class and Disposition Subclass and enter a judgment for Jones and the classes against TitleMax:

a. Declaring the Title Loan Agreements and liens were entered into contrary to Missouri title loan law and are void under §§ 367.527.1.7 and 367.527.2.

b. A preliminary and permanent injunction enjoining TitleMax from engaging in the practices alleged, including without limitation, enjoining TitleMax from negotiating, soliciting or offering loans secured by a motor vehicle title that do not comply with §§ 367.500 to 367.533.

c. Ordering TitleMax disgorge all money collected on the Title Loan Agreements that exceeded the original Amount Financed or $5,000, whichever is less, including money collected by disposition of the motor vehicles.

d. Declaring TitleMax's arbitration clause is unconscionable, against Missouri public policy, and unenforceable.

e.  Awarding actual damages not less than the minimum damages provided by § 400.9-625(c)(2).

f.  Statutory damages of $500 for each defective post-sale notice sent.

g.  Prejudgment and post-judgment interest.

h.  Punitive damages.

i.  Attorney's fees.

j.  For such other and further relief as this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____

Martin L. Daesch #40494
Jesse B. Rochman, #60712
600 Washington Avenue – 15th Floor
St. Louis, MO 63101
(314) 231-3332
(314) 241-7604 Facsimile
mdaesch@sandbergphoenix.com
jrochman@sandbergphoenix.com
*Attorneys for Timothy H. Jones*

6385767.2                    32