UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY H. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15-cv-01361-JAR |
| | ) |
| TITLEMAX OF MISSOURI, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant TitleMax of Missouri, Inc.'s ("TitleMax") Motion to Compel Arbitration (Doc. No. 8). In his Petition, filed in Missouri state court and removed to this Court on diversity grounds, Plaintiff alleges individual and class complaints in six counts: one for declaratory judgment, and statutory counts under Missouri Revised Statutes Section 367.527, the Missouri Merchandising Practices Act, Missouri Revised Statutes Chapter 408, and the Uniform Commercial Code. Plaintiff's counts each relate to so-called "title loans" issued by Defendant, which are loans with exorbitant interest rates and which are generally made without regard to a loan recipient's credit score or ability to repay the loan. The loans are instead based on the Defendant's assertion of a lien on a vehicle title.

An August 18, 2012 Consumer Installment Loan Agreement executed between Plaintiff and Defendant ("Agreement") includes certain arbitration provisions governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq. The Agreement compels binding arbitration for any disputes arising out of or relating to the contracts or the parties' relationships. The

1

Agreement also contains what appears to be a class action waiver, requiring all claims to be arbitrated on an individual basis.  Finally, the Agreement includes what has commonly been referred to as a "delegation provision," which delegates to the arbitrator any dispute about the Agreement itself, including disputes regarding "the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision, and any claim or attempt to set aside this Arbitration Provision[.]"  (Doc. No. 9-1 at 2.)  Defendant now moves to compel individual arbitration of all of Plaintiff's claims.  Plaintiff opposes the motion.  For the following reasons, Defendant's motion will be granted.

## BACKGROUND

In August 2012, Plaintiff Timothy Jones took out a loan with TitleMax secured by a lien on his 2003 Dodge Ram 2500 truck.  The terms of this loan were set forth in the Agreement. Relevant to the present motion, the Agreement includes a choice of law provision, which states:

> **GOVERNING LAW, ASSIGNMENT.** This Loan Agreement shall be governed by the laws of the State of Missouri, except that the Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("FAA"). We may assign or transfer this Loan Agreement or any of our rights hereunder.

(Doc. No. 9-1 at 2.)

The Agreement also includes express terms regarding Plaintiff's mandatory individual arbitration of claims (the "Arbitration Provision") as follows:

> **WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.**
> Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present some

2

evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), **the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision)**, the information you gave us before entering into this Loan Agreement,and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or directly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:

3

> **(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
> **(b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
> **(c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

*Id.* at 2 (emphasis added in Paragraph 1). More specifically, the Arbitration Provision includes a delegation provision, which has the effect of committing to an arbitrator any decision on the validity of the parties' entry into the Agreement:

> [T]he words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Loan Agreement (including the Arbitration Provision) . . .

*Id.* The Agreement also contains limitations on "Representative Claims"—class or collective actions—as well as exceptions for equitable claims. Near the line for Plaintiff's signature, the Agreement further set forth:

> **Please note that this Loan Agreement contains a binding Waiver of Jury Trial and Arbitration Provision, which limits your right to file suit against us.** By signing this Loan Agreement you acknowledge that it was filled in before you did so and that you have received a completed copy of it . . . **You acknowledge that you have read, understand, and agree to all the terms of this Loan Agreement, including the ADDITIONAL TERMS AND**

>   **CONDITIONS set forth on Page 2 of 3 and Page 3 of 3 of this Loan Agreement which contains a "Waiver of Jury Trial and Arbitration Provision."**

*Id.* at 3 (emphasis in original).  Finally, the Agreement sets forth a specific provision by which a borrower can opt-out of the Arbitration Provision, but Plaintiff did not avail himself of the option.

On July 24, 2015, Plaintiff filed this putative class action in the Circuit Court of St. Louis City, Missouri.  He asserted six claims of alleged statutory or regulatory violations under Missouri law.  Plaintiff's Petition also requests declaratory relief establishing that "TitleMax's arbitration clause is unconscionable, against Missouri public policy, and unenforceable." (Petition at 31.)

Defendant's instant motion to compel argues that the FAA mandates enforcement of the Arbitration Provision in the Agreement.  Defendant further argues that the class waiver provisions of the Agreement are enforceable, and that this action should be dismissed or stayed pending arbitration of Plaintiff's claims.

Plaintiff responds in two ways: first, he alleges that because he is seeking equitable relief, he should be able to pursue the instant motion in federal court.  More pertinently, Plaintiff asserts that the entirety of the Arbitration Provision is unconscionable and therefore, should not be enforced.  Plaintiff cites *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. 2012), which upheld a finding of unconscionability in an arguably similar arbitration agreement and which was decided by the Missouri Supreme Court following the United States Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).  Plaintiff argues the following factors, also present in *Brewer*, apply to the instant Agreement: Defendant was in a superior bargaining position and offered Plaintiff a non-negotiable Title Loan Agreement; the Arbitration Provision

5

was very difficult to understand; and, as in *Brewer*, the small damages potential of each individual loan make individualized claims difficult or impossible to litigate; and, the terms of the Arbitration Provision are one-sided.  Specifically, Plaintiff argues that the Arbitration Provision is one-sided because according to the Agreement's anti-waiver provision, TitleMax is permitted to obtain primary remedies of judicial or self-help repossession without arbitration.  Plaintiff argues that as a title lending company, repossession is TitleMax's "primary remedy."  (Doc. No. 10 at 7.)  Thus, Plaintiff asserts that TitleMax has preserved its equitable remedies as well as its primary monetary remedy—the ability to repossess a given vehicle, sell it, and pursue a deficiency judgment from a small claims division if necessary.  Describing this as a "one-sided . . . carve out," Plaintiff further argues that it cannot be severed because the Agreement lacks a severability clause, and that it renders the entire Agreement unconscionable.

In reply, Defendant asserts that any claim of unconscionability must be decided—pursuant to the Agreement—by the assigned arbitrator according to the delegation clause, and that even if the Court addresses unconscionability on its merits, any such claim should fail.  Defendant cites to the United States Supreme Court's holding in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), which established that unless a plaintiff challenges a delegation provision *specifically*, courts will treat it as valid under § 2 of the FAA and will enforce its terms.

In Plaintiff's sur-reply, filed with the Court's leave, he raises—for the first time—arguments relating specifically to the purported unconscionability of the delegation provision.  He argues that it represents an unfair surprise, and that his previously asserted grounds for unconscionability of the Agreement as a whole also apply to the delegation provision.  Finally, Plaintiff argues that because the instant matter is chiefly concerned with contract

6

formation, even under the terms of the Agreement, it is not properly referred to arbitration.

## LEGAL STANDARD

The FAA "establishes a liberal federal policy favoring arbitration." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)).  "[T]he FAA limits a district court's initial role in any challenge to an arbitration agreement to deciding whether 'the making of the agreement for arbitration or the failure to comply therewith' is at issue." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4).  "[The United States Court of Appeals for the Eighth Circuit] has refined this inquiry to asking 1) whether the agreement for arbitration was validly made and 2) whether the arbitration agreement applies to the dispute at hand, i.e., whether the dispute falls within the scope of the arbitration agreement." *Id.*; *see also Torres*, 781 F.3d at 968–69.  An arbitration agreement's scope is interpreted liberally, with any doubts resolved in favor of arbitration. *MedCam*, 414 F.3d at 975.  A district court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* (internal quotations omitted).

## DISCUSSION

### *Validity of the Delegation Provision*

Plaintiff and Defendant devote much of their initial briefs to the terms of the Agreement and whether Plaintiff is bound to arbitration for his action in equity, but the Court must first answer a threshold question: whether the delegation provision is valid.  If the answer to that question is affirmative, the Court must defer and submit the case to arbitration not only on its core substantive questions, but on the question of "arbitrability" based on the Agreement's definition of "disputes"

which includes "all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision[.]"  (Doc. No. 9-1 at 2.)  Therefore, the only question the Court may endeavor to answer at the outset is whether the delegation provision is valid, or whether, as Plaintiff argues, the delegation provision itself is unconscionable and must be voided.  If the delegation provision is valid as a matter of law, all other issues raised in the case should not be addressed, and the Court's only role will be to enter an order compelling arbitration.

The Supreme Court's decision in *Rent–A–Center* addressed a challenged delegation provision.  In that case, a plaintiff filed suit against Rent–A–Center, his former employer.  As part of his employment contract, the plaintiff signed a "Mutual Agreement to Arbitrate Claims" which provided for arbitration of all "past, present or future disputes arising out of [plaintiff's] employment," and which provided that "[t]he Arbitrator, and not any federal state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part this Agreement is void or voidable."  561 U.S. at 65–66.  The plaintiff in *Rent–A–Center* argued that the arbitration provision as a whole was unconscionable. Rent-A-Center responded that this preliminary question was delegated to the arbitrator.  The Supreme Court agreed with Rent-A-Center, holding that under the FAA, where an agreement to arbitrate includes an agreement that the arbitrator will determine the enforceability of the agreement, then the decision regarding enforceability is for the arbitrator. *Id.* at 67–74.  The Supreme Court labeled this delegation provision a "gateway issue," and held that "unless [the

8

plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it . . . leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72.

The Arbitration Provision in this case, like the agreement to arbitrate in *Rent–A–Center*, expressly delegates the "gateway issue" of arbitrability to an arbitrator. *See* 561 U.S. at 70. "[T]he FAA operates on this additional arbitration agreement just as it does on any other." *Id.* And while the delegation provision in the instant matter may differ slightly from the provision at issue in *Rent-A-Center*, the Court finds that the delegation provision is virtually identical to that addressed by this Court in *Volpe v. Advance Am.*, No. 4:15 CV 1119 JMB, 2015 WL 5124202 (E.D. Mo. Sept. 1, 2015) (finding *Rent-A-Center* applicable and controlling, and granting the motion to compel arbitration). There, as here, the delegation provision at issue stated explicitly that "all disputes" would be resolved by an arbitrator, and "dispute" was defined to include "the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision." *Id.* at *2. Furthermore, even prior to *Rent–A–Center,* the rule in the Eighth Circuit was that federal courts should defer the question of arbitrability to the arbitrator where the court finds "a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator." *Fallo v. High–Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009). Here, the Arbitration Provision is clear that any dispute about the signing of the agreement, its validity and scope, or any effort to set it aside—in short, any dispute related to contract formation—is within the province of the arbitrator.

Plaintiff argues that the instant matter is distinguishable from *Rent-A-Center* because, in his sur-reply, he raises—for the first time—arguments that the delegation clause itself is

9

unconscionable. In fact, in Plaintiff's earlier briefing on Defendant's Motion to Compel Arbitration, and in Plaintiff's Petition, Plaintiff does not argue that the delegation clause specifically is unconscionable, but only that the "arbitration clause" generally is unconscionable—an argument found inadequate in *Rent-A-Center*. But aside from being raised late in the proceedings, Plaintiff's specific delegation provision arguments are unavailing. The delegation clause itself cannot be said to be an unfair surprise; it was included in clear terms in the first paragraph of the Arbitration Provision, and the Arbitration Provision itself used highlighted, bolded print to express that the signer of the Agreement was "waiving [his] right to have a trial by jury to resolve any dispute[.]" (Doc. No. 9-1 at 2.) Information about the Arbitration Provision was repeated immediately above the line for Plaintiff's signature, and similar delegation provisions have been upheld by this Court in the past. *See Volpe*, 2015 WL 5124202; *Wilson v. Career Educ. Corp.*, No. 4:11 CV 1583 RWS, 2011 WL 6012172 (E.D. Mo. Dec. 2, 2011).

The unconscionability factors set forth in *Brewer* also apply with little force to the delegation provision. Plaintiff argues Defendant was in a superior bargaining position and offered Plaintiff a non-negotiable Title Loan Agreement; that the Arbitration Provision was very difficult to understand; that the terms of the Arbitration Provision are one-sided; and, as in *Brewer*, that the small damages potential of each individual loan make individualized claims difficult to impossible to litigate. Applying these arguments *specifically* to the delegation provision—as Plaintiff asks the Court to do in his sur-reply—the Court finds them either inapplicable (one-sided terms, small damages) or unpersuasive. With regard to Defendant's superior bargaining position and the non-negotiable nature of the delegation clause, the Court finds it relevant that the Arbitration Provision has an "opt-out" procedure whereby Plaintiff could decline to be bound by

10

the Arbitration Provision—so it is untrue that the Agreement was offered on a take-it-or-leave-it basis. The fact that the Agreement appeared on a pre-printed form alone does not make it unconscionable. *Robinson v. Title Lenders, Inc.,* 364 S.W.3d 505, 515 (Mo. 2012) ("a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally"). With regard to difficulty understanding the Agreement, the Court finds that the delegation provision itself is reasonably easy to interpret. Moreover, the Agreement's use of bold print and repeated statements explaining the nature of arbitration and the binding nature of the Arbitration Provision generally undermine such an argument. Thus, the Court determines that the delegation provision is valid, and must refer to arbitration any dispute about the validity and applicability of the Arbitration Provision.

*Enforceability of the Agreement*

Alternatively, however, even if the Court were to determine that it is the correct entity to make a decision as to the enforceability of the Arbitration Provision, the Court would find it enforceable under the FAA and Missouri law, and would not find the Arbitration Provision as a whole unconscionable.

In assessing unconscionability at contract formation, a court looks to the purposes of the unconscionability doctrine, which is "to guard against one-sided contracts, oppression and unfair surprise," which may "occur during the bargaining process" or when a later dispute reveals "the objectively unreasonable terms." *Brewer,* 364 S.W.3d at 492–93. For much the same reasons given above in reference to the delegation provision specifically, the Arbitration Provision generally is not unconscionable because it is too difficult to understand, because it was

11

non-negotiable, or because the Defendant was in a superior bargaining position.  Again, the Arbitration Provision's "opt-out" procedure suggests Plaintiff retained agency in determining whether to be bound by the provision.  As noted above, simply because the Agreement was presented as a pre-printed form does not make it per se unconscionable.  *Robinson,* 364 S.W.3d at 515 (Mo. 2012).  The Arbitration Provision's use of bold and underlined print and its repeated statements regarding the waiver of rights indicate that it was not beyond the grasp of a person of reasonable capability.  With regard to Plaintiff's argument that the Arbitration Provision is one-sided because it gives Defendant powers of repossession, the Court will simply note that mutuality of obligation is not necessary in arbitration agreements.  *See Eaton v. CMH Homes, Inc.,* 461 S.W.3d 426, 433 (Mo. 2015) ("the lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement").

Therefore, to the extent this Court considers the enforceability of the Arbitration Provision, it determines that the Arbitration Provision was validly made.  Pursuant to its limited role in "any challenge to an arbitration agreement," which is restricted "to deciding whether 'the making of the agreement . . . is at issue,'" the Court finds that, considering all relevant factors, the Arbitration Provision was not unconscionable and is therefore enforceable.  *See MedCam, Inc.*, 414 F.3d at 974 (quoting 9 U.S.C. § 4).

## CONCLUSION

The Court's opinion should not be read as a statement on the inherent fairness, or lack thereof, of TitleMax's Agreement.  But under the precedent set by *Rent-A-Center*, the Court is limited in its ability to question the validity of a delegation provision like the one presented in this matter, particularly where that specific issue has not been identified as a central component of the

challenge to the Agreement.   For the aforementioned reasons, this Court holds that under *Rent–A–Center v. Jackson*, the question of arbitrability is for the arbitrator in the first instance; and holds in the alternative that the underlying arbitration provision is not unconscionable under the FAA and Missouri law, and it is thus enforceable in this matter.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant TitleMax of Missouri, Inc.'s Motion to Compel Arbitration (Doc. No. 8) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending arbitration.  The Clerk of Court is ordered to administratively close the case until such time as the parties move for judgment to be entered according to the outcome of arbitration proceedings.

**IT IS FINALLY ORDERED** that the parties shall jointly submit a notice updating the Court on the status of this case every 120 days, including within 120 days of this Memorandum and Order, and shall also submit a notice updating the Court no later than ten (10) days following the completion of arbitration.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 5th day of August, 2016.