# EXHIBIT G

**IN ARBITRATION**

| | |
|---|---|
| TIMOTHY H. JONES, | ) |
| | ) |
|      Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| TITLEMAX OF MISSOURI, INC., | ) |
| | ) |
|      Respondent. | ) |
| | ) |

**RESPONDENT TITLEMAX OF MISSOURI, INC.'S RESPONSE AND
AFFIRMATIVE DEFENSES TO
TIMOTHY H. JONES'S STATEMENT OF CLAIM**

Respondent TitleMax of Missouri, Inc., ("TitleMax") files this Response to Claimant

Timothy H. Jones's ("Jones") Statement of Claim.

**Nature of Case**

1.      This is a consumer class action against TitleMax seeking relief to redress an

unlawful and deceptive pattern of wrongdoing conducted by TitleMax regarding the formation,

collection, and enforcement of its title loan agreements and its disposition of the consumer

property secured by the title loan agreements.

**ANSWER:**     Paragraph 1 calls for a legal conclusion which does not require a response.

To the extent any response is required: Denied.

2.      TitleMax violated §§ 367.500 to 367.533 regarding its title loans with Jones and

many other Missouri Consumers ("Title Loan Agreements"). The Title Loan Agreement entered

into between TitleMax and Jones is attached as **Exhibit A**.

**ANSWER:**     Denied; except that the Consumer Installment Loan Agreement attached

as Exhibit A speaks for itself.

3.     TitleMax wrongfully accelerated the maturity of the unpaid balance under the Title Loan Agreements and otherwise wrongfully enforced its security interest under the Title Loan Agreements because TitleMax either failed to give the right to cure notice required by § 408.554 ("Right to Cure Notices") or gave defective Right to Cure Notices.

**ANSWER:**     Denied.

4.     TitleMax failed to send Jones and numerous other Missouri consumers a presale notice, which complied with the Uniform Commercial Code ("UCC") adopted by Missouri.

**ANSWER:**     Denied.

5.     TitleMax failed to send Jones and numerous other Missouri consumers a post-sale notice, which complied with the UCC.

**ANSWER:**     Denied.

6.     Jones sues for himself and all other similarly situated Missouri consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

**ANSWER:**     Paragraph 6 calls for a legal conclusion which does not require a response. To the extent any response is required: Jones has waived his right to bring a suit on the basis stated, and otherwise cannot sue for others; and TitleMax is otherwise without knowledge or information sufficient to form a belief as to the remaining truth of the averments in this paragraph; therefore the averments in this paragraph are denied.

**Parties**

7.     Jones is a resident of Troy, Missouri.

**ANSWER:**     TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

2

8.      TitleMax is a Delaware corporation, headquartered at 15 Bull Street, Suite 200, Savannah, Georgia 31401, which does substantial business in Missouri.  TitleMax of Missouri, Inc. does business as TitleMax and TitleBucks.

**ANSWER:**    Admitted that TitleMax of Missouri, Inc. is a Delaware Corporation whose principal place of business is 15 Bull Street, Suite 200, Savannah, Georgia, 31401 and that it does business in Missouri using the trade names TitleMax and TitleBucks.

## Jurisdiction and Venue

9.      The Circuit Court of St. Louis City, Missouri has jurisdiction over this matter under Article V, § 14 of the Missouri Constitution and § 478.070 which grant Missouri circuit courts original jurisdiction over all civil cases and matters.

**ANSWER:**    Paragraph 9 calls for a legal conclusion which does not require a response. To the extent any response is required: Denied.

10.      Venue is proper in this Court under § 508.010 because TitleMax is not a resident of Missouri and does substantial business in St. Louis City.

**ANSWER:**    Paragraph 10 calls for a legal conclusion which does not require a response. To the extent any response is required: Denied.

## Organizational Structure of TitleMax

11.      The TitleMax family of companies includes: (1) TitleMax Finance Corp., (2) TMX Finance LLC, (3) TMX Finance Holdings Inc., (4) TitleMax Holdings, LLC, (5) TMXA, LLC, (6) TMX Credit, Inc., (7) TMX Investments, LLC., (8) TitleMax Funding, Inc., (9) TitleMax Management Services, Inc., and (10) TitleMax Construction, LLC.

3

**ANSWER:**   TitleMax of Missouri, Inc. admits that its parent company is TMX Finance LLC.  TitleMax of Missouri, Inc.  is without knowledge or information sufficient to form a belief as to the remaining averments in this paragraph; therefore the remaining are denied.

12.   TMX Finance LLC has multiple wholly-owned operating subsidiaries set up in various states, including TitleMax of Alabama, Inc.; TitleMax of Arizona, Inc.; TitleMax of Georgia, Inc.; TitleMax of Illinois, Inc.; TitleMax of Mississippi, Inc.; TitleMax of Missouri., Inc.; TitleMax of Nevada, Inc.; TitleMax of S. Carolina, Inc.; TitleMax of Tennessee, Inc.; TitleMax of Texas, Inc.; and TitleMax of Virginia, Inc.

**ANSWER:**   TitleMax of Missouri, Inc. admits it is a wholly-owned subsidiary of TMX Finance LLC.  To the extent a further response is required, TitleMax denies any remaining allegations.

13.   Although the TitleMax family of companies may be registered as separate companies, in reality they all operate together as a single entity under the joint control of Tracy Young ("Young"), with no separation.

**ANSWER:**   Denied.

14.   Despite these multiple subsidiaries, TitleMax operates as a single entity, under the control of Young. There is no meaningful division or separation between the entities within the TitleMax family of companies.

**ANSWER:**   Denied.

15.   All TitleMax stores, regardless of whether they may be owed by any subsidiary, are operated under a company-wide risk management system supported by district and regional managers all under the same central leadership of Mr. Young.

**ANSWER:**   Denied.

4

16.     Young is the founder, Chairman of the Board, Chief Executive Officer, President and the sole beneficial owner of TMX Finance LLC's parent holding company, TMX Finance Holdings Inc., and all other TitleMax companies. He is also the CFO and the Secretary.

**ANSWER:**     TitleMax admits that Tracy Young is currently the CEO, President, and Secretary of TitleMax of Missouri, Inc.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied.

17.     Young controls substantially all matters of significance to  all  TitleMax companies, including the strategic direction of their business; the election and removal of their managers; the appointment and removal of their officers; the approval or rejection of a sale, merger, consolidation or other business combination; the issuances of additional equity or debt securities; amendments of its organizational documents; and the entering into of related party transactions and the dissolution and liquidation.

**ANSWER:**     Denied.

18.     TMX Finance LLC's principal corporate office is at 15 Bull Street, Suite 200, Savannah, Georgia 31401. This is the same address listed by the Missouri Secretary of State's records for TitleMax of Missouri, Inc., and on information and belief, the same address for the other TitleMax companies.

**ANSWER:**     TitleMax states the Missouri Secretary of State's records for TitleMax of Missouri, Inc. speak for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied.

19.     TitleMax has over 1,400 company-owned stores in 17 states (Alabama, Arizona, California, Delaware, Georgia, Illinois, Mississippi, Missouri, Nevada, New Mexico, Ohio, South Carolina, Tennessee, Texas, Utah, Virginia, and Wisconsin).

**ANSWER:**     Denied.

### Title Loans

20.     Title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-clear.

**ANSWER:**     Denied.

21.     Title loans are traditionally offered as single-payment loans with one-month terms, which are often renewed multiple times.

**ANSWER:**     Denied.

22.     An emerging practice is a movement toward title loans that are longer-term, high-cost installment products.

**ANSWER:**     Denied.

23.     Title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often higher than 200%.

**ANSWER:**     Denied.

24.     A typical borrower on a title loan pays twice as much in interest and fees than the borrower receives in credit extended.

**ANSWER:**     Denied.

25.     Nationally, car title lending drains $4.3 billion annually in excessive fees.

**ANSWER:**     TitleMax denies the averments of this paragraph to the extent they are intended to refer or relate to TitleMax.  TitleMax is without knowledge or information sufficient

6

to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied.

26.     Title lenders engage in asset-based lending (making loans without evaluating the borrower's ability to repay the loan). Instead, lenders base whether and how much to lend on the value of the collateral.

**ANSWER:**     The terms of the loans TitleMax makes to its customers including Jones speak for themselves, otherwise denied.

27.     Car-title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

**ANSWER:**     The terms of the loans TitleMax makes to its customers including Jones speak for themselves, otherwise denied.

28.     A typical car-title loan requires no credit check, and lenders rarely ask about monthly expenses or debts. Some do not ask about income or require that the borrower have a bank account.

**ANSWER:**     TitleMax is without knowledge or information sufficient to form a belief as to what other lenders do, and as to the truth of the averments in this paragraph; therefore they are denied.

29.     Rather than properly underwriting the loans based on a borrower's income and obligations, lenders protect themselves from loan losses by lending only a small percentage (about one-quarter) of the car's consumer resale value (commonly known as ''Blue Book" value) and repossessing the vehicle if default occurs.

**ANSWER:**    TitleMax is without knowledge or information sufficient to form a belief as to what other lenders do, and as to the truth of the averments in this paragraph; therefore they are denied.

30.    Title lenders generally have no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments. Ability to repay is not part of the underwriting process.  Because some lenders lend at a small percentage of the car's value, title lenders can rely on selling the car if the borrower stops making the monthly payments.

**ANSWER:**    TitleMax is without knowledge or information sufficient to form a belief as to what other lenders do, and as to the truth of the averments in this paragraph; therefore they are denied.

31.    Title lenders systematically disregard a borrower's ability to repay, as demonstrated through at least three modes: lenders' advertising and marketing, industry data and statements, and negative consumer outcomes -- namely, repeat loan refinancings and vehicle dispositions.

**ANSWER:**    TitleMax is without knowledge or information sufficient to form a belief as to what other lenders do, and as to the truth of the averments in this paragraph; therefore they are denied.

32.    An analysis of the records from 561 auto title borrowers shows the median loan size was $845, the median car value (Blue Book value) was $3,150, the median loan-to-value ratio was 26% and the median APR was 300%.

**ANSWER:**    To the extent that paragraph 32 is a summation of footnote 1 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or

information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

33.     The Missouri Auditor's report documented that 70% of title and payday Loan consumers earned less than $25,000 per year.

**ANSWER:**     To the extent that paragraph 33 is a summation of footnote 2 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

34.     Half of all car-title borrowers are unbanked, lacking access to both mainstream and subprime credit.

**ANSWER:**     To the extent that paragraph 34 is a summation of footnote 1 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

35.     For consumers living paycheck to paycheck, the short timeframe of these loans can make it difficult to accumulate the necessary funds to pay off the loan principal and fees before the due date.

**ANSWER:**     To the extent that paragraph 35 is a summation of footnote 4 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

36.     Borrowers who cannot repay are often encouraged to roll over the loan - pay more fees to delay the due date or take out a new loan to replace the old one.

**ANSWER:**   To the extent that paragraph 36 is a summation of footnote 4 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

37.   For many borrowers, what starts out as a short-term, emergency loan turns into an unaffordable, long-term debt trap.

**ANSWER:**   To the extent that paragraph 37 is a summation of footnote 4 on page 6 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

38.   In Missouri, "on average, title . . . lenders make 3.5 times more renewal loans than new loans each month."

**ANSWER:**   To the extent that paragraph 38 is a summation of footnote 7 on page 7 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

39.   The 2001 Missouri Auditor's Report provides a real life example:

A consumer obtained a title loan for $900 on July 7, 2000, renewed the loan J times paying $902 in interest and fees, but made no reductions in the principal amount. The consumer obtained this loan against her 1993 Buick Century. She was 67 years old, living on a fixed income, and as of October 2000 her loan was still open. She has already paid the equivalent of the Joan value in fees, and still owes the $900. This practice will continue until the consumer starts paying on the

principal. In this example, the consumer is "hanging on" by paying fees but has still not been able to satisfy the loan.

**ANSWER:**     To the extent that paragraph 39 is a summation of the 2001 Missouri Auditor's Report, TitleMax states that Report speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

40.     Additional history on title loans and lenders is attached as **Exhibit B**.

**ANSWER:**     To the extent that paragraph 40 is a summation of Exhibit B to the Statement of Claim, TitleMax states it speaks for itself.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

### TitleMax's Business

41.     TitleMax acts as a title lender without a title loan license,

**ANSWER:**     Denied.

42.     TitleMax offers to lend money at high rates of interest, with its title loans secured by titles to consumer's motor vehicles.

**ANSWER:**     Denied.

43.     TitleMax is one of the nation's largest title lending companies, providing over 2,500 consumers title loans every day.

**ANSWER:**     Denied.

44.     TitleMax specializes in motor vehicle title loans, which it advertises as "a fast and easy way to get cash using your car title instead of your credit score."

11

**ANSWER:**     TitleMax denies that it specializes in motor vehicle title loans, and as to the remainder referenced in footnotes 9 and 10 on page 7, TitleMax states the website speaks for itself.

45.     TitleMax markets its loans as ''title loans.''

**ANSWER:**      Denied and states further the website speaks for itself.

46.     TitleMax markets itself as a title lender that issues title loans.

**ANSWER:**     Denied and states further the website speaks for itself.

47.     TitleMax has submitted business applications in Missouri listing "Title Loans" as one of its types of business and "Title Lending" as the nature of its business.

**ANSWER:**     Denied and demand strict proof thereof.

48.     TitleMax's parent company has stated in Missouri, title loans receivable comprise 24-month title loans with payments of principal and interest due monthly.

**ANSWER:**     TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

49.     TitleMax's parent company has stated TitleMax is a wholly-owned title lending, subsidiary.

**ANSWER:**     TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

50.     TitleMax's title loans are expensive loans secured by the title to a vehicle or other consumer property that the borrower owns free-and-Clear.

**ANSWER:**     The terms of the loans TitleMax makes to its customers including Jones speak for themselves, otherwise denied.

51.     TitleMax title loans are marketed as a quick financial fix, but lead to long-term debt and carry obscene annual interest rates often as high as 200%, if not more.

**ANSWER:**     Denied.

52.     TitleMax advertises that it makes the ''title lending process simple" and it will determine a title loan amount based upon the consumer's need and the appraised value of the vehicle.

**ANSWER:**     To the extent that paragraph 52 is a summation of footnote 15 on page 8 of the Statement of Claim, TitleMax states it speaks for itself.  TitleMax does not advertise for its Missouri product alone.

53.     TitleMax advertises that consumers are eligible for title loans even if they have bad credit or no credit.

**ANSWER:**     To the extent that paragraph 53 is a summation of footnote 16 on page 8, TitleMax states it speaks for itself.  TitleMax does not advertise for its Missouri product alone.

54.     TitleMax has stated that "All underwriting decisions are made· based on the appraised wholesale value of a customer's vehicle rather than credit score."

**ANSWER:**     TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

55.     TitleMax engages in asset-based lending, basing whether and how much to lend on the value of the collateral.

**ANSWER:**     Admitted that TitleMax offers a loan in part based on the value of the vehicle; further, the terms of the loans TitleMax makes to its customers including Jones speak for themselves, otherwise denied.

56.    TitleMax's title loans are based on the value of a borrower's car owned free-and-clear, rather than the ability of the borrower to repay the loan and meet other obligations without re-borrowing.

**ANSWER:**    The terms of the loans TitleMax makes to its customers including Jones speak for themselves, otherwise denied.

57.    TitleMax requires no credit check, and rarely asks about monthly expenses or debts.

**ANSWER:**    Admitted that TitleMax required no credit check for Mr. Jones' loan; the remaining allegations are denied.

58.    TitleMax's borrowers have zero power to negotiate the Title Loan Agreements, including a reasonable interest rate or the waivers of their rights and protections, and will pay whatever amount TitleMax charges.

**ANSWER:**    Denied.

59.    TitleMax's Title Loan Agreements are non-negotiable and difficult for the average consumer to understand.

**ANSWER:**    Denied.

60.    On information and belief, no consumer has ever successfully renegotiated the standard terms of TitleMax's Title Loan Agreements.

**ANSWER:**    Denied.

61.    Rather than properly underwriting the loans based on a borrower's income and obligations, TitleMax protects itself from loan losses by lending only a small percentage of the conservative wholesale value of the customer's automobile in the Black Book, as opposed to the higher retail value in the Black Book.

**ANSWER:**     Denied.

62.     TitleMax has no interest in whether the consumer borrowing the money can afford to pay back the loan or make the monthly interest payments.

**ANSWER:**     Denied.

63.     Ability to repay is not part of the underwriting process for TitleMax.

**ANSWER:**     Denied.

64.     Because TitleMax lends at a small percentage of the car's value, TitleMax relies on selling the car if the borrower stops making the monthly payments.

**ANSWER:**     Denied.

65.     TitleMax's typical car title loan is refinanced eight times according to testimony given by a former president of TitleMax.

**ANSWER:**     TitleMax denies that its loans are typically refinanced and is without knowledge as to the testimony referred to in paragraph 65.

66.     TitleMax relies on loan renewals as underpinning its business structure.

**ANSWER:**     Denied.

67.     TitleMax systematically disregards a borrower's ability to repay, as demonstrated through at least three modes: its advertising and marketing, industry data and statements, and negative consumer outcomes-namely, repeat loan refinancings and vehicle dispositions.

**ANSWER:**     Denied.

### General Allegations

68.     Jones obtained a title loan from TitleMax secured by his motor vehicle title.

**ANSWER:**     Denied.

69.     Jones' Title Loan Agreement (Exhibit A) provided a loan of $5,013.50 ("Amount Financed") with an annual percentage rate of 119.9916%. The Title Loan Agreement required 23 monthly payments of $557.97 and one final monthly payment of $558.14.  If each of the payments were made as scheduled, Jones would pay over $5,377 in interest ("Finance Charge").

**ANSWER:**     TitleMax states that Exhibit A speaks for itself otherwise denied.

70.     Jones' Title Loan Agreement required him to deliver title of his motor vehicle to TitleMax and allow TitleMax to note its lien on the certificate of title.

**ANSWER:**     TitleMax states that Exhibit A speaks for itself otherwise denied.

71.     Jones' Title Loan Agreement provided that TitleMax would hold the certificate of title until Jones timely satisfied the title loan by paying the amount due under the Title Loan Agreement, at which time TitleMax would release its lien and return the certificate of title to Jones.

**ANSWER:**     TitleMax states that Exhibit A speaks for itself otherwise denied.

72.     Jones' Title Loan Agreement provided that if the consumer defaulted, upon acceleration of the principal balance plus accrued interest, interest will continue to accrue only on the principal balance owing at the contract rate until final judgment.

**ANSWER:**     TitleMax states that Exhibit A speaks for itself otherwise denied.

73.     The Title Loan Agreement entered into by Jones is a standardized form and is the same or similar to the Title Loan Agreements entered into by each member of the Class (defined below).

**ANSWER:**     Admitted that the agreement entered into by Jones is TitleMax's agreement effective June 24, 2010, and is without knowledge as to the remainder.  Further

answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

74.     The Title Loan Agreement was entered into for personal, family, or household purposes and the motor vehicle was used for personal, family, or household purposes.

**ANSWER:**    TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied.

75.     Jones and each member of the Class who entered into a Title Loan Agreement with TitleMax were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

**ANSWER:**     TitleMax denies that Jones or any other proposed member of the class entered into a Title Loan Agreement, and further states paragraph 75 calls for legal conclusion which does not require a response. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

76.     For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

a.     As. required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan: is paid in full.

b.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 36T518.1(4), the Title Loan Agreements failed  to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten "point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.      As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.      As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

h.      As prohibited by § 367.527.1 (3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

i.      As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), failed to reduce the principal of the loan by I 0% upon the third and subsequent renewals.

18

      k.     Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

      l.     Otherwise failed to provide all required notices to Jones and the Class.

      m.    Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

77.    TitleMax knowingly violated §§ 357.500 to 367.53.3 in violation of § 367.527.

**ANSWER:**    Denied.

78.    TitleMax violated §§ 357.500 to 367.533 when conducting transactions with Jones' and. the Class, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

79.    After Jones and the Class missed a payment under the Title Loan Agreement,

TitleMax either failed to give them a Right to Cure Notice or gave a defective Right to Cure Notice that included misleading or incorrect information.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

80.    TitleMax accelerated the balances due on Jones' and the Class's Title Loan Agreements without giving the required Right to Cure Notices.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

81.     After default, TitleMax continued to charge Jones and the Class interest at the rate in the Title Loan Agreements before obtaining a final judgment in violation of § 408.553.

**ANSWER:**     Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

82.     TitleMax or someone at TitleMax's direction sold the motor vehicles secured by the Title Loan Agreements without giving the required Right to Cure Notices.

**ANSWER:**     Denied.

83.     Under § 408.555, TitleMax wrongfully accelerated Jones' and the Class's Title Loan Agreements by failing to give the required Right to Cure Notices before acceleration.

**ANSWER:**     Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

84.     Under § 408.555, TitleMax wrongfully enforced its security interest under the Title Loan Agreements with Jones and the Class, by among other things, selling their motor vehicles before giving the required Right to Cure Notices.

**ANSWER:**     Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

85.     TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**     Denied.

86.     TitleMax or someone at TitleMax is direction either failed to send or sent defective presale notices to Jones and the Class advising them of TitleMax's intent to dispose of their motor vehicles.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

87.    If presale notices were sent, they were not reasonable as required by § 400.9- 61 l (b) because the presale notices were misleading because, among other reasons, Jones and the Class were not required to pay any amount to get their motor vehicles back.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

88.    TitleMax failed to send Jones and the Class reasonable authenticated notices of disposition as required by § 400.9-611.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

89.  TitleMax or someone at TitleMax's direction disposed of Jones' and the Class's motor vehicles without sending or after sending defective Right to Cure Notices and presale notices.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

90.    After disposition, TitleMax or someone at TitleMax's either failed to send or sent defective post-sale notices to Jones and the Class explaining how it calculated their deficiency balances.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

91.    If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

21

a.      do not provide all the information, in the requisite order, as required by §

400;9-616(c)(3);

b.      do not state future debits, credits, charges, including additional credit

service charges or interest, rebates, and expenses may affect the surplus, as required by §

400.9-616(a)(1 )(C); and

c.      misstate the aggregate obligation (as required by § 400.9-616(c)(1 )) and

the deficiency or surplus (as required by §§ 400.9-616(a)(1 )(A), (c)(6)) by including

unpaid balances that had not become due and interest and charges prohibited by law.

**ANSWER:**      Denied.  Further answering, there is no class in this case and Jones has

waived his right to bring or to participate in any class action or arbitration; otherwise denied.

92.      Future debits, credits, charges, including additional credit service charges or

interest, rebates, and expenses affected the surplus or deficiency for Jones and the Class.

**ANSWER:**      Denied.  Further answering, there is no class in this case and Jones has

waived his right to bring or to participate in any class action or arbitration; otherwise denied.

93.      TitleMax's failure to provide a statutorily compliant post-sale notice is part of a

pattern, or consistent with a practice, of noncompliance.

**ANSWER:**      Denied.

94.      TitleMax's violation of Chapter 400 also violate   §§ 367.512.1(6),   (7)  and

367.521, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**      Denied.

95.      TitleMax's actions were wanton, outrageous, and/or malicious because of its

reckless indifference to or conscious disregard of the consumer rights of Jones and the Class.

**ANSWER:**      Denied.

**Class Allegations**

96.     Jones sues for himself and a class designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful; or deceptive business practices  alleged, and seeks redress for all those persons harmed.

**ANSWER:**    Denied that TitleMax engaged in any unfair, unlawful or deceptive business practices.  TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

97.     The Class comprises all persons who entered into a loan agreement with TitleMax at any location in Missouri, and the loan agreement was secured by a motor vehicle title.

**ANSWER:**    Denied that there should be a class, as to the remainder, TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

98.     Disposition Subclass comprises those members of the Class whose motor vehicles were sold by or at the direction of TitleMax from July 24, 2009 to the present.

**ANSWER:**    Denied that there should be a class, as to the remainder, TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

99.     The classes are believed to be so numerous that joinder of all members is impractical.

**ANSWER:**     Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

100.     There are questions of law and fact common to the classes.

**ANSWER:**     Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

l01.     The principal legal questions common to Jones and each Class member are:

a.     Whether the title loans with TitleMax complied with disclosure, notice and consumer protection provisions of §§ 367.500 to 367.533.

b.     Whether the title loans with TitleMax are void.

c.     Whether Jones and the Class are entitled to punitive damages.

**ANSWER:**     Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

102.     The principal legal questions common to Jones and each Disposition Subclass member are:

a.     Whether TitleMax unlawfully charged and collected interest in violation of § 408.553.

b.     Whether TitleMax failed to give Right to Cure Notices as required by § 408.554, and if not, whether the defective Right to Cure Notices make the presa1e and post-sale notices defective if they were sent.

c.     Whether TitleMax failed to give presale notices as required by § 400.9-611.

d.      Whether TitleMax failed to give post-sale notices as required by § 400.9-616.

e.      Whether Jones and the Disposition Subclass are entitled to punitive damages.

**ANSWER:**      Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

103.    Jones' claims are typical of the claims of the classes.

**ANSWER:**      Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

104.    Jones' claims are based on the same factual and legal theories as the classes' claims.

**ANSWER:**      Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

105.    The violations alleged by Jones and the Class derive from written, form Title Loan Agreements that violate §§ 367.500 to 367.533 in one or more of the same ways.

**ANSWER:**      Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

106.    The violations alleged by Jones and the Class derive from standard pattern of conduct by TitleMax regarding its title loans that violates §§ 367.500 to 367.533.

**ANSWER:**      Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

107.    The violations alleged by Jones and the Disposition Subclass derive from a standard pattern of conduct by TitleMax in failing to send Right to Cure Notices or sending written, form Right To Cure Notices that fail to comply with §§ 408.554 and 408.555.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

108.    The violations alleged by Jones and the Disposition Subclass derive from written, form presale notices that fail to comply with the Missouri UCC.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

109.    The violations alleged by Jones and the Disposition Subclass derive from written, form post-sale notices that fail to comply with the Missouri UCC.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

110.    Jones and each member of the Class are entitled to a declaration that the Title Loan Agreements are void, actual damages equal to any amount paid to TitleMax beyond the original Amount Financed, and punitive damages.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

111.    Jones and each member of the Disposition Subclass were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to TitleMax's unlawful collection of interest, and its failure to give proper Right to Cure Notices, presale notices and post-sale notices.

**ANSWER:** Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

112. Jones will fairly and adequately represent and protect the interests of the classes.

**ANSWER:** Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

113. Jones has no interests antagonistic to those of the classes.

**ANSWER:** Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

114. Jones' counsel is competent and experienced in consumer and class litigation.

**ANSWER:** Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

115. Jones and all class members have an interest in determining the adequacy of the Title Loan Agreements, Right to Cure Notices, presale notices and post-sale notices sent by TitleMax and to recover damages due to the statutorily defective Right to Cute Notices, presale notices and post-sale notices.

**ANSWER:** TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

116. The questions of law or fact common to the classes predominate over questions affecting only individual members.

**ANSWER:** Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

27

117.    Jones and each member of the classes will rely on the same basic evidence (i.e., TitleMax's businesses model and marketing, the Title Loan Agreements, the form Right to Cure Notices, presale notices and post-sale notices).

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

118.    Determining the legality of the Title Loan Agreements resolves all Class members' claims because each Title Loan Agreement suffers from at least one of the same deficiencies as Jones' Title Loan Agreement.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

119.    Determining the sufficiency of the Right to Cure Notices, presale notices and post-sale notices resolves all Disposition Subclass members' claims because TitleMax either failed to send these notices entirely or each notice sent to the Disposition Subclass members would suffer from at least one of the same deficiencies as any notices allegedly sent to Jones.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

120.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

121.    The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

**ANSWER:**    TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

122.    A consumer probably could not retain counsel to pursue individual claims against TitleMax.

**ANSWER:**    Denied.

123.    Most class members are probably unaware TitleMax violated their rights and the law.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

124.    If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

125.    Concentrating the litigation of Jones' arid the classes' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

126.    The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

## Count I- Declaratory Judgment (Class)

127.    Jones repeats the allegations set forth above as if set forth in Count I.

**ANSWER:**    TitleMax repeats its responses to the allegations set forth above as if set forth in Count I.

128.    A justiciable controversy exists between TitleMax and the Class for which the Class has no adequate remedy at law.

**ANSWER:**    Denied.

129.    TitleMax acts as a title lender without a title loan license.

**ANSWER:**    Denied.

130.    The Title Loan Agreements for the Class were all secured by title to the Class's motor vehicles.

**ANSWER:**    Denied.

13l.    Sections 367.500 to 367.533 were enacted to protect the consumer borrower.

**ANSWER:**    TitleMax states Sections 367.500 to 367.533 speak for themselves.

132.    The Title Loan Agreements represent transactions clearly within the spirit or reason of §§ 367.500 to 367.533, or within the evil which those statutes were designed to remedy.

**ANSWER:**    Denied.

133.    For each of the Title Loan Agreements with Jones and the Class, TitleMax violated Missouri law for at least one or all of the following reasons:

a.      As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.      As required by § 367.51 8.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading: "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.1 before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.      As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.      As prohibited by § 367.527.1(2), TitleMax made loans exceeding $5,000.

31

h.      As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights

and protections for the borrower in the Title Loan Agreements.

i.      As prohibited by § 408.553, the Title Loan Agreements provide interest

will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), failed to reduce the principal of the loan by

10% upon the third and. subsequent renewals.

k.      Otherwise failed to include all necessary and required disclosures in the

Title Loan Agreements entered into by Jones and the Class.

l.      Otherwise failed to provide all required notices to Jones and the Class.

m.      Collected interest, fees, and disposed of Jones' and the Class's motor

vehicles on void Title Loan Agreements.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has

waived his right to bring or to participate in any class action or arbitration; otherwise denied.

134.    TitleMax knowingly violated §§ 357.500 to 367.533 'in violation of § 367.527.

**ANSWER:**    Denied.

135.    TitleMax violated §§ 357.500 to 367.533 when conducting transactions with

Jones' and the Class, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has

waived his right to bring or to participate in any class action or arbitration; otherwise denied.

136.    Jones and the Class are not bound by the Title Loan Agreements.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has

waived his right to bring or to participate in any class action or arbitration; otherwise denied.

137.   Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the ''Prayer for Relief."

**ANSWER:**   Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

### Count II - Private Right of Action under Chapter 367 (Class)

138.   Jones repeats the allegations set forth above as if set forth in Count II.

**ANSWER:**   TitleMax repeats it responses to the allegations set forth above as if set forth in Count II.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

139.   Sections 367.500 to 367.533 protect consumer borrowers by requirement and proscription of certain conduct but provide no express civil remedy to persons injured by a title lenders failure to comply with sections 367.500 to 367.533.

**ANSWER:**   TitleMax states 367.500 to 367.533 speak for themselves.

140.   TitleMax violated §§ 367.500 to 367.533 when negotiating, offering, soliciting or entering into the Title Loan Agreements with Jones and the Class.

**ANSWER:**   Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

141.   As a direct and proximate result of TitleMax' s failure to comply with the requirements of §§ 367.500 to 367.533, Jones and the Class suffered actual damages, including:

a.   Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

b.   Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

33

      c.      Violations of statutorily requited notice and disclosure requirements in the Title Loan Agreements.

      d.      Paid fees and incurred costs besides the principal on the loan.

      e.      Other uncertain and hard-to-quantify actual damages.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

142.    Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief."

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

### Count III - Missouri Merchandising Practices Act (Class)

143.    Jones repeats the allegations set forth above as if set forth in Count III.

**ANSWER:**    TitleMax repeats its responses to the allegations set forth above as if set forth in Count III.

144.    This Count is brought under the Missouri Merchandising Practices Act ("MMPA"), §§ 407.010 et seq.

**ANSWER:**    This paragraph does not contain any averments to which a response is required. But to the extent this paragraph is intended to contain factual averments, they are denied.

145.    Jones and the Class purchased services primarily for personal purposes, and suffered an ascertainable loss as the result of the use and employment by TitleMax of methods, acts and practices declared unlawful under Missouri law.

**ANSWER:**   TitleMax is without knowledge or information sufficient to form a belief as to why Jones and the purported class purchased services, and denied as to the remainder. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

146.   Jones and the Class may bring this action under § 407.025.

**ANSWER:**   Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

147.   Jones and the Class entered into consumer transactions with TitleMax which involved the payment of interest and fees as a condition for obtaining short-term loans.

**ANSWER:**   Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

148.   Lending is included in the definition of "merchandise" under the MMPA.

**ANSWER:**   Denied.

149.   Jones' and the Class's loans were obtained exclusively for their personal use.

**ANSWER:**   TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

150.   During these transactions, TitleMax engaged in unfair or deceptive trade practices including the issuing of loans through unlawful trade practice, concealment, suppression, omission of, and the knowing failure to state, material facts, including:

a.   As required by § 367.512.1(4), the Title Loan Agreements failed to disclose TitleMax must renew the Title Loan Agreements upon the borrower's written

request and the payment by the borrower of any interest due at the time of such renewal. However, upon the third renewal of any title loan agreement, and any subsequent renewal, the borrower shall reduce the principal by ten percent until such loan is paid in full.

b.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose in at least ten-point bold type, that nonpayment of the title loan may cause loss of the borrower's vehicle or other titled personal property.

c.      As required by § 367.518.1(4), the Title Loan Agreements failed to disclose the monthly interest rate to be charged.

d.      As required by § 367.518.1(2), the Title Loan Agreements failed to disclose a statement, in at least ten-point bold type, separately acknowledged by the signature of the borrower and reading:  "You may cancel this loan without any costs by returning the full principal amount to the lender by the close of the lender's next full business day."

e.      As required by § 367.525.1, TitleMax failed to provide the notice specified in § 367.525.l before accepting a title loan application from Jones and the Class that resulted in the Title Loan Agreements.

f.      As required by § 367.525.4, TitleMax failed to consider the financial ability of Jones and the Class to reasonably repay the title loans evidenced by the Title Loan Agreements.

g.      As prohibited by § 367.5.27.1(2), TitleMax made loans exceeding $5,000.

h.      As prohibited by § 367.527.1(3), TitleMax accepted the waiver of rights and protections for the borrower in the Title Loan Agreements.

36

i.      As prohibited by § 408.553, the Title Loan Agreements provide interest will accrue from the date the borrower defaulted until a final judgment.

j.      As required by § 367.512.1(4), failed to reduce the principal of the loan by 10% upon the third and subsequent renewals.

k.      Otherwise failed to include all necessary and required disclosures in the Title Loan Agreements entered into by Jones and the Class.

l.      Otherwise failed to provide all required notices to Jones and the Class.

m.      Collected interest, fees, and disposed of Jones' and the Class's motor vehicles on void Title Loan Agreements.

n.      TitleMax holds itself out to be a title lender issuing title loans, but asserts it is not a title lender, does not issue title loans, and is not required to disclose matters required for title loan transactions.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

151.    TitleMax willfully and intentionally violated the MMPA.

**ANSWER:**    Denied.

152.    As a direct and proximate result of TitleMax's failure to comply with the MMPA, Jones and the Class are aggrieved and have suffered ascertainable losses, including:

a.      Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

b.      Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

37

      c.      Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

      d.      Paid fees and incurred costs besides the principal on the loan.

      e.      Other uncertain and hard-to-quantify actual damages.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

153.    TitleMax's violation of Chapters 367 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

**ANSWER:**    Denied.

154.    TitleMax's violation of Chapters 367 and 408 offends the laws of this state intended to protect the public and. constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

**ANSWER:**    Denied.

155.    TitleMax's violation of Chapters 367 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

**ANSWER:**    Denied.

156.    The MMPA provides the trial court may order an injunction or other equitable relief and reasonable attorney's fees.

**ANSWER:**    TitleMax states the MMPA speaks for itself.

157.    Jones and the Class request the Court enter judgment in their favor and against TitleMax as described in the "Prayer for Relief.''

**ANSWER:** This paragraph does not contain any averments to which a response is required, but to the extent this paragraph is intended to contain factual averments, it is denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

### Count IV - Chapter 408 Violations (Disposition Subclass)

158. Jones repeats the allegations set forth above as if set forth in Count IV.

**ANSWER:** TitleMax repeats its responses to the allegations set forth above as if set forth in Count IV.

159. Section 408.553 prohibits a lender from charging or collecting interest after default until after a final judgment is obtained.

**ANSWER:** TitleMax states Section 408.553 speaks for itself.

160. Contrary to § 408.553, the Title Loan Agreements provide interest will continue to accrue on the Title Loan Agreements after default even if no final judgment is obtained.

**ANSWER:** Denied.

161. TitleMax did not seek deficiency judgments or other judgments against Disposition Subclass.

**ANSWER:** TitleMax is without knowledge or information sufficient to form a belief as to the truth of the averments in this paragraph; therefore they are denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

162. TitleMax wrongfully charged or collected interest that accrued after default but before any final judgment was obtained.

**ANSWER:** Denied.

163.    Section 408.555 prohibits TitleMax from accelerating the maturity of the unpaid balance or otherwise enforcing its security interest until the notice required by § 408.554 is given.

**ANSWER:**    TitleMax states Section 408.555 and 408.554 speak for themselves, denied as to the remainder.

164.    TitleMax failed to give Jones and the Disposition Subclass the notice required by § 408.554 before it accelerated the maturity of the unpaid balances under the Title Loan Agreements.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

165.    TitleMax failed to give Jones and the Class the notice required by § 408.554 before it sold the collateral secured by the Title Loan Agreements.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

166.    TitleMax wrongfully accelerated the maturity of the unpaid balances under the Title Loan Agreements.

**ANSWER:**    Denied.

167.    TitleMax wrongfully sold the collateral secured by the Title Loan Agreements.

**ANSWER:**    Denied.

168.    TitleMax's violation of Chapter 408 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**    Denied.

169.   As a direct and proximate result of TitleMax's wrongful charge and collection of interest, wrongful acceleration and disposition, and failure to send the requisite notices, Jones and the Disposition Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

a.   Wrongfully collected amounts of interest.

b.   The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

c.   Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

d.   Paying excess interest and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

e.   Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

f.   Paid fees and incurred costs besides the principal on the Joan.

g.   Harm caused by defamation, slander and libel.

h.   Harm caused by invasion of privacy.

i.   Other uncertain and hard-to-quantify actual damages.

**ANSWER:**   Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

170.   Jones and the Disposition Subclass are entitled to attorney's fees under § 408.562.

**ANSWER:**   Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

171.    Jones and the Disposition Subclass are entitled to punitive damages under §
408.562.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has
waived his right to bring or to participate in any class action or arbitration; otherwise denied.172.

Jones and the Class request the Court enter judgment in their favor and against TitleMax
as described in the "Prayer for Relief.''

**ANSWER:**    This paragraph does not contain any averments to which a response is
required.  To the extent this paragraph is intended to contain factual averments, it is denied.

### Count V - UCC Violations (Disposition Subclass)

173.    Jones repeats the allegations set forth above as if set forth in Count V.

**ANSWER:**    TitleMax repeats its responses to the allegations set forth above as if set
forth in Count V.

174.    TitleMax violated the UCC by failing to send the presale notice in the form and
manner required under the UCC before disposing of collateral secured by loans between
TitleMax and the Disposition Subclass.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has
waived his right to bring or to participate in any class action or arbitration; otherwise denied.

175.    Alternatively, TitleMax violated the UCC by sending presale notices to .Jones and
the Disposition Subclass that included additional  language or content not authorized  or allowed
by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-
614 of the UCC.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has
waived his right to bring or to participate in any class action or arbitration; otherwise denied.

176.    As required under § 9-611 of the UCC, TitleMax failed to provide "reasonable authenticated notice of disposition" to Jones and the Disposition Subclass.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

177.    TitleMax did not send post-sale notices, or any other explanation or writing, to Jones and the Disposition Subclass providing all the information, in the requisite order, as required by § 9-616 of the UCC.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

178.    If post-sale notices were sent, the post-sale notices sent to Jones and the Class fail to comply with § 400.9-616 because they, among other reasons:

a.    do not provide all the information, in the requisite order, as required by § 400.9-616(c)(3);

b.    do not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the surplus, as required by § 400.9-616(a)(l)(C); and

c.    misstate the aggregate obligation (as required by § 400.9-616(c)(I )) and the deficiency or surplus (as required by §§ 400.9-616(a)(l )(A), (c)(6)) by including unpaid balances that had not become due and interest and charges prohibited by law.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

179.    Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the surplus or deficiency for Jones and the Disposition Subclass.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

180.    TitleMax's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

**ANSWER:**    Denied.

181.    TitleMax's violation of Chapter 400 also violate §§ 367.512.1(6), (7) and 367.521, rendering the Title Loan Agreements void under § 367.527.2.

**ANSWER:**    Denied.

182.    As a direct and proximate result of TitleMax's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC Jones and the Disposition Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

       a.    Harm caused by defamation, slander, and libel.

       b.    Harm caused by invasion of privacy.

       c.    Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

       d.    Other uncertain and hard-to-quantify actual damages.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

**Count VI – MMPA  (Disposition Subclass)**

183.    Jones repeats the allegations set forth above as if set forth in Count VI.

**ANSWER:**    TitleMax repeats its responses to the allegations set forth above as if set forth in Count VI.

184.    TitleMax provided financial credit services to Jones and the Disposition Subclass for primarily personal, family, household or consumer purposes.

**ANSWER:**    Admitted that TitleMax provided financial services to Jones, as to the remainder, TitleMax is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph; therefore they are denied.

185.    In acting against Jones and the Disposition Subclass as alleged above; TitleMax used and employed methods, acts and practices declared unlawful by the MMPA, including:

a.    Charging and collecting interest prohibited by § 408.553.

b.    Failing to send or sending, allowing or authoring defective, deceptive and legally insufficient right to cure, presale and post-sale notices.

c.    Failing to send or sending, allowing or authoring defective, deceptive and legally insufficient Right to Cure Notices.

d.    Violating Chapters 400 and 408.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

186.    TitleMax's actions against Jones and the Disposition Subclass were unfair, deceptive or unconscionable practices, all in violation of the MMPA and 15 C.S.R. § 60-8.020.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

45

187.    TitleMax's violation of Chapters 400 and 408 offends the public policy as it has been established by the statutes of this state and is a per se unfair practice prohibited by the MMPA and 15 C.S.R. § 60-8.020.

**ANSWER:**    Denied.

188.    TitleMax' s violation of Chapters 400 and 408 offends the laws of this state intended to protect the public and constitutes a per se unfair practice prohibited by the MMPA; 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

**ANSWER:**    Denied.

189.    TitleMax's violation of Chapters 400 and 408 presents a risk of and caused substantial injury to consumers, and constitutes a per se unfair practice prohibited by the MMPA, 15 C.S.R. § 60-8.090 28, and 15 CSR 60-8.090.

**ANSWER:**    Denied.

190.    TitleMax's actions caused ascertainable loss of money and property to Jones and the Disposition Subclass, including:

a.    Wrongfully collected amounts of interest.

b.    The surplus after disposition of the collateral that would be equal to the proceeds of disposition minus the wrongfully accrued interest and unaccelerated balance due on the consumer loan contracts.

c.    Paying principal, fees and interest on loans issued without consideration for Jones and the Class's ability to repay the title loans.

d.    Paying excess interests and fees because TitleMax failed to reduce the principal by at least 10% upon the third and subsequent renewals.

46

e.      Violations of statutorily required notice and disclosure requirements in the Title Loan Agreements.

f.      Paid fees and incurred costs besides the principal on the loan.

g.      Other uncertain and hard-to-quantify actual damages.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

191.    TitleMax's actions caused substantial injury to Jones and the Disposition Subclass.

**ANSWER:**    Denied. Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

192.    TitleMax's acts and conduct alleged. above were done in reckless disregard of Jones' and the Disposition Subclass's legal rights and Missouri law, such that assessment of punitive damages against TitleMax is warranted to ensure that the purposes of the MMPA – to preserve fundamental honesty, fair play and right dealings in public transactions - are promoted and that violations do not go unpunished or unremedied.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

193.    Under the MMPA, Jones and the Disposition Subclass may recover actual damages, punitive damages, reasonable attorney's fees, injunctive and other equitable relief against TitleMax.

**ANSWER:**    Denied.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

**Prayer for Relief**

WHEREFORE, Jones prays this Court certify the Class and Disposition Subclass and enter a judgment for Jones and the classes against TitleMax:

a.      Declaring the Title Loan Agreements and liens were entered into contrary to Missouri title loan law and are void under §§ 367.527.1.7 and 367.527.2.

b.      A preliminary and permanent injunction enjoining TitleMax from engaging in the practices alleged, including without limitation, enjoining TitleMax from negotiating, soliciting or offering loans secured by a motor vehicle title that do not comply with §§ 367.500 to 367.533.

c.      Ordering TitleMax disgorge all money collected on the Title Loan Agreements that exceeded the original Amount Financed or $5,000, whichever is less, including money collected by disposition of the motor vehicles.

d.      Declaring TitleMax's arbitration clause is unconscionable, against Missouri public policy, and unenforceable.

e.      Awarding actual damages not less than the minimum damages provided by § 400.9- 625(c)(2).

f.      Statutory damages of $500 for each defective post-sale notice sent.

g.      Prejudgment and post-judgment interest.

h.      Punitive damages.

i.      Attorney's fees.

j.      For such other and further relief as this Court deems just and proper.

**ANSWER:**      To the extent the Prayer for Relief requires response Respondent denies Claimant is entitled to the specific relief requested therein in subparts "a" through "j" or to any relief whatsoever.  Respondent denies any allegations in the Statement of Claim not specifically

48

admitted herein.  Respondent denies that Claimant is entitled to recover any damages in this action.  Further answering, there is no class in this case and Jones has waived his right to bring or to participate in any class action or arbitration; otherwise denied.

## AFFIRMATIVE DEFENSES

1.     The Statement of Claim fails to state any claim upon which relief can be granted.

2.     Claimant's claims are barred, in whole or in part, by doctrines of waiver, estoppel, laches, unclean hands, payment, accord and satisfaction, release, compromise and settlement, discharge, waiver, and/or such additional defenses as may arise during these proceedings.

3.     Claimant's requested relief is barred, in whole or in part, by the doctrine of recoupment or setoff.

4.     Claimant's Statement of Claim is barred in whole or in part by the doctrines of *res judicata* (claim preclusion), and/or collateral estoppel (issue preclusion) and/or the rule against claim splitting or the splitting of causes of action.

5.     Claimant's Statement of Claim is barred in whole or in part because Claimant entered into a settlement agreement with TitleMax, and granted TitleMax a binding release under that contract.

6.     Claimant's Statement of Claim is barred in whole or in part by the doctrine of judicial estoppel in that Claimant is or was a debtor in bankruptcy but he failed to include his purported claims or causes of action against Respondent as assets of his bankruptcy estate, and therefore may not pursue them in this or any other civil forum.  *In re Timothy H. Jones*, Case No. 15-45021 (United States Bankruptcy Court for the Eastern District of Missouri).

7.     Claimant lacks standing to pursue any or all of the purported claims or causes of action set forth in the Statement of Claim either because of the referenced bankruptcy

49

proceedings, orders and filings or because Claimant has previously otherwise assigned or transferred his legal authority and power to bring these proceedings.

8.     To the extent that Claimant sustained any injuries or damages which were the result of negligence or conduct of non-parties, they are barred or estopped from recovery against this Respondent.

9.     Respondent states that pursuant to R.S.Mo § 407.020.2(2), to the extent Respondent is an institution subject to licensing and regulation by the (director of the department of financial institutions) or the director of the division of finance, it is therefore statutorily exempt from individual or class-wide liability for alleged or purported violations of the Missouri Merchandising Practices Act, R.S.Mo § 407.020.

10.    Respondent is not liable for alleged statutory violations in the absence of any authorized express or implied private right of action, which renders the claimant without standing or legal right to bring these claims.

11.    Respondent is entitled to a credit or off set for all sums paid to Claimant for alleged damages by any other party and/or non-party which has occurred pursuant to RSMO § 537.060.

12.    Respondent states that any ascertainable damages which Claimant asserts, and which Respondent specifically denies, are subject to a credit and offset for the value of the use of the vehicle at issue.

13.    Respondent further states that any ascertainable damages which the Claimant asserts, and which Respondent specifically denies, are subject to a credit and offset for the diminishment in value to the vehicle at issue caused by the Claimant's continued usage.

50

14.     Respondent states that Claimant's causes of action are barred by the doctrine of laches in that Claimant's unreasonable delay in reporting the alleged deficiencies in the sale of the vehicle prejudiced Respondent's ability to refute the claims.

15.     Respondent states that Claimant's causes of action are barred by the doctrines of acceptance and acquiescence in that the Claimant continued to use and diminish the value of the vehicle at issue.

16.     Respondent states that Claimant's causes of action are barred by the Claimant's consent to the contractual terms, in that he acted in conformity with the contract terms for an extended period of time without rescinding or otherwise challenging the contract.

17.     Respondent states that Claimant's causes of action are barred by the Claimant's ratification of the contractual terms, in that he acted in conformity with the contract terms for an extended period of time without rescinding or otherwise challenging the contract.

18.     Respondent states that Claimant's causes of action are barred by the doctrine of unclean hands.

19.     Respondent states that if Claimant sustained any damages, which it specifically denies, the same were caused or contributed to be caused by the intervening acts, superseding acts and subsequent conduct or fault on the part of persons or entities over which Respondent neither had control, nor the right of control, and, therefore, Claimant's claims against this Respondent are barred.

20.     If Claimant sustained any damages as alleged in Claimant's Statement of Claim, which Respondent specifically denies, Claimant's alleged damages were not reasonably foreseeable by Respondent and, therefore, recovery against Respondent is barred.

21.     To the extent Claimant failed to take reasonable steps and measures to mitigate his alleged damages, if any, Claimant's alleged damages, if any, should be barred and/or reduced accordingly.

22.     Claimant's recovery if any should be barred or reduced under the doctrine of avoidable consequences.

23.     Claimant's recovery if any should be barred or reduced under the doctrine of comparative fault.

24.     Claimant's recovery if any should be barred or reduced under the doctrine of *in pari delicto*.

25.     Claimant's claims and alleged damages sounding in defamation, slander and libel are barred based on the actions and truthful statements of Respondent taken or made in good faith, without any malice, to enforce or protect legally and contractually valid interests.  In addition, any such claims or damages alleged are barred by certain qualified or limited privileges and defenses, including the doctrine of substantial truth, the opinion doctrine, the shared interest privilege, the common interest privilege, the fact that any and all such allegedly defamatory communications arose from corresponding or related duties and obligations, privileges arising from participation in judicial proceedings, the intra-corporate immunity doctrine and the witness immunity rule. Claimant's claims of defamation, slander and libel are further barred to the extent they are based on statements of opinion or hyperbole or other subjective statements. No actual malice attended any of the statements allegedly forming the basis of Claimant's claims and damages alleged based on defamation, slander or libel. No statement of Respondent was the cause in fact or the proximate cause of any material or reputational harm to Claimant.

26.     Claimant is barred from pursuing claims for punitive damages because Respondent engaged in no acts or omissions that would either rise to the level required to sustain

an award of punitive damages, were not motivated by evil intent, did not evidence a malicious, knowing, oppressive or fraudulent intent to deny Claimant's protected rights, and are not so wanton or willful as to support an award of punitive damages.

27.    Claimant's allegations of punitive damages must be denied because an award of punitive damages against Respondent deprives Respondent of property without due process of law since the basis for an award of such damages is vague and indefinite and is not the basis of any consistent standard to be applied to conduct subjecting Respondent to such damages, all in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, § 10 of the 1945 Constitution of Missouri.

28.    Claimant's allegation of punitive damages must be denied because an award of punitive damages against Respondent subjects Respondent to multiple jeopardy or punishments for the alleged commission of a single act in violation of the Eighth Amendment to the United States Constitution and Article I, Bill of Rights, § 19 of 1945 Constitution of Missouri.

29.    Claimant's allegations of punitive damages must be denied because an award of punitive damages against Respondent subjects Respondent to excessive fines and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I of Bill of Rights, § 21 of the 1945 Constitution of Missouri.

30.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, § 10 of the 1945 Constitution of Missouri, because the standard for determining whether to impose punitive damages is vague and indefinite and does not provide adequate guidance to the trier of fact, and the law fails to explain in comprehensible

53

terms to the conduct prohibited, thus requiring Respondent to speculate as to what conduct is prohibited.

31.     Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 of the 1945 Constitution of Missouri, by permitting unconstitutionally excessive punishment.

32.     Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, § 10 of the 1945 Constitution of Missouri, by permitting the trier of fact to impose punitive damages without requiring a greater burden of proof.

33.     Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 and 13 of the 1945 Constitution of Missouri, by imposition of a retroactive standard governing the liability for and the amount of the penalty.

34.     Claimant's allegation of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of the Bills of Attainder and Ex Post Facto clauses of the United States Constitution, Article 1, § 9, CL.3; Art. I, CL.I; and Article I, Bill of Rights, § 13 of the 1945 Constitution of Missouri, by imposition of a retroactive standard governing liability for punitive damages and the amount.

35.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, § § 10 and 2 of the 1945 Constitution of Missouri, since Missouri law erroneously permits arbitrary, capricious and discriminatory enforcement.

36.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, § § 10 and 19 of the 1945 Constitution of Missouri, because such an award results in multiple punishments for a single act or course of conduct.

37.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law and puts it in jeopardy more than once, in violation of Respondent's rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 and 19 of the 1945 Constitution of Missouri.

38.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law by imposing excessive fines and cruel and unusual punishment in violation of Respondent's rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 and 21 of the 1945 Constitution of Missouri.

39.    Claimant's allegations of punitive damages must be denied because an award of punitive damages deprives Respondent of property without due process of law and deprives Respondent of equal protection of the laws in violation of Respondent's rights under the Fifth

55

and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights,

§ § 10 and 2 of the 1945 Constitution of Missouri, because Missouri law governing punitive

damages is not rationally related to a legitimate state interest, and in any event, is not the least

restrictive means by which to accomplish any state interest to be served.

40.     Claimant's allegations of punitive damages must be denied because an award of

punitive damages deprives Respondent of property without due process of law in violation of

Respondent's rights under the Fifth and Fourteenth Amendments to the United States

Constitution and Article I, Bill of rights, §§ 10 and 2 of the 1945 Constitution of Missouri,

because Missouri law provides no cap or other comprehensible limitation of the amount of

punitive damages.

41.     Claimant's allegation of punitive damages must be denied because an award of

punitive damages deprives Respondent of property without due process of law in violation of

Respondent's rights under the Fifth and Fourteenth Amendments to the United States

Constitution and Article I, Bill of Rights, § 10, 18(a) of the 1945 Constitution of Missouri,

because the procedures utilized in the trial on the issue of punitive damages failed to provide

adequate guarantees of a presumption of innocence.

42.     Claimant's allegations of punitive damages must be denied because an award of

punitive damages is punishment which may be awarded by less than a unanimous verdict in

violation of the Sixth Amendment and Article 3, Section 2 of the United States Constitution and

Article I, Bill of Rights, § 22(a) of the 1945 Constitution of Missouri.

43.     Claimant's allegations of punitive damages must be denied because an award of

punitive damages deprives Respondent of property without due process of law and further

deprives Respondent of the equal protection of the laws in violation of Respondent's rights under

the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 and 2 of the 1945 Constitution of Missouri, because the trier of fact is told to take into consideration the evidence of Respondent's net worth, implying to the trier of fact that it would be more appropriate to punish Respondent rather than another party or person under similar circumstances who had a lesser net worth.

44.     Claimant's allegations of punitive damages must be denied because an award of punitive damages has the effect of treating Respondent differently and discriminatorily, thus depriving Respondent of property without due process of law and further depriving Respondent of the equal protection of the laws in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Bill of Rights, §§ 10 and 2 of the 1945 Constitution of Missouri.

45.     Any resulting award of punitive damages, which claims are expressly denied by Respondent, are strictly limited to the greater of (a) $500,000 or (b) five times the net amount of the judgment awarded to Claimant against Respondent. §510.265, RSMo.

46.     Claimant's claims are barred by the applicable statutes of limitations.

47.     Claimant's claims are subject to and limited by a binding arbitration agreement. Claimant's claims and damages should be barred, reduced or restricted in accordance with any limitations or waivers contained in the binding arbitration agreement between the parties.

48.     Respondent reserves the right to add any affirmative defense uncovered during the progress of these proceedings based on discovery or investigation.

49.     Claimant's putative class is barred because Claimant has validly and contractually waived any procedural right to participate in a class action or arbitration and has waived the right to act as a class representative in any such action or arbitration. Respondent incorporates herein

by reference its pending motion to dismiss Claimant's class allegations and supporting brief, submitted and served on November 11, 2016.

50.     Claimant's putative class is further barred in that the order of the United States District Court for the Eastern District of Missouri in the case of Jones v. TitleMax of Missouri, Inc., Case No. 4:15-cv-01361 (JAR) has already so ordered by finding the arbitration agreement and class waiver therein between Claimant and Respondent to be valid, binding and enforceable according to its terms.

51.     Claimant's putative class is barred in that it fails to meet the requirements of applicable law in that, without limitation:

    a.     There has been no showing that the putative class is sufficiently numerous to render joinder impracticable;

    b.     There are insufficient common questions of fact or law;

    c.     The Claimant's claims and defenses are not typical of the claims and defenses of the putative class;

    d.     The Claimant and his counsel will not fairly and adequately protect the interests of the class.

52.     Claimant's putative class fails in that it is not adequately defined and is thus not ascertainable.

    **WHEREFORE**, Respondent respectfully request that the Arbitrator enter a ruling and award in Respondent's favor, a) denying any possibility of class arbitration, b) denying any and all relief and remedies sought by Claimant, c) dismissing each and every one of Claimant's claims with prejudice, and d) awarding Claimant its costs and fees to the extent not inconsistent

58

with the Arbitration Agreement, incurred in defending this matter, and e) granting such further

relief as permitted by law and contract.

**Dated:  December 2, 2016**

Respectfully submitted,

**BERKOWITZ OLIVER LLP**


By:  /s/ Anthony J. Durone
Anthony J. Durone  MO Bar # 43872
EDMO No. 43872MO
Email: adurone@berkowitzoliver.com
Stacey R. Gilman    MO Bar # 55690
EDMO No. 55690MO
Email: sgilman@berkowitzoliver.com
Nicholas L. DiVita   MO Bar # 37514
EDMO No. 37514MO
Email: ndivita@berkowitzoliver.com
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri  64108
Telephone:                (816) 561-7007
Facsimile:                (816) 561-1888

*Attorneys for Respondent TitleMax of
Missouri, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2d day of December, 2016, the foregoing

was electronically mailed to the following:

>Jesse B. Rochman
>Onder, Shelton, O'Leary & Peterson LLC
>110 E. Lockwood Ave.
>St. Louis, MO  63119
>314-963-9000
>rochman@onderlaw.com
>
>Martin L. Daesch
>Onder, Shelton, O'Leary & Peterson LLC
>110 E. Lockwood Ave.
>St. Louis, MO  63119
>314-963-9000
>daesch@onderlaw.com
>
>*Attorneys for Claimant Timothy H. Jones*

>/s/Anthony J. Durone
>Attorney for Respondent